1    Todd C. Ringstad - State Bar #97345
    todd@ringstadlaw.com
2    Nanette D. Sanders – State Bar #120169
    nanette@ringstadlaw.com
3    **RINGSTAD & SANDERS, LLP**
    2030 Main Street, Suite 1200
4    Irvine, CA 92714
    Telephone: (949) 851-7450
5    Facsimile: (949) 851-6926

6    Proposed General Insolvency Counsel for
    Dynamic Builders, Inc.

7

8            **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

11    In re                               Case No. 8:10-14151 TA

12    DYNAMIC BUILDERS, INC., a         Chapter 11 Proceeding
    California corporation;

13                              **NOTICE OF MOTION AND MOTION OF**
14           Debtor and                **DEBTOR FOR ORDER:  (1) APPROVING**
          Debtor-in-Possession.       **SALE OF COMMERCIAL PROPERTY**
15                              **FREE AND CLEAR OF LIENS, CLAIMS**
                              **AND ENCUMBRANCES PURSUANT TO**
16                              **BANKRUPTCY CODE SECTIONS 363(B),**
                             **363 (F), AND 363 (M); (2) APPROVING**
17                              **OVERBID PROCEDURES, (3)**
                             **AUTHORIZING DEBTOR TO PAY**
18                              **SECURED CLAIM IN FULL FROM NET**
                             **SALE PROCEEDS, AND (4) AUTHORIZING**
19                              **THE EMPLOYMENT OF BROKER, LEE &**
                             **ASSOCIATES COMMERCE, INC., AND**
20                              **AGENTS DAVID BRANDT AND JEFFREY**
                             **RINKOV; (5) AUTHORIZING INTERIM**
21                              **LEASE TO BUYER OR BUYER'S**
                             **NOMINEE PENDING CLOSE OF ESCROW;**
22                              **MEMORANDUM OF POINTS AND**
                             **AUTHORITIES; DECLARATIONS OF L.**
23                              **RAMON BONIN AND JEFFREY RINKOV**
                             **IN SUPPORT THEREOF**

24                              **[1151 S. Boyle Avenue, Los Angeles, CA]**

25                              HEARING:
                             DATE:    May 12, 2010
26                              TIME:    10:00 a.m.
                             PLACE:   Courtroom 5B,
27                                      United States Bankruptcy Court
                                     411 W. Fourth Street
28                                      Santa Ana, CA

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1   **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES**

2   **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND**

3   **OTHER INTERESTED PARTIES:**

4       **PLEASE TAKE NOTICE** that on May 12, 2010, at 10:00 a.m., in Courtroom 5B of the

5   above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, before the

6   Honorable Theodor C. Albert, United States Bankruptcy Judge, Dynamic Builders, Inc., a

7   California corporation, the debtor and debtor-in-possession herein ("Debtor"), will, and hereby

8   does, move the Court for an Order authorizing: (i) the sale of the estate's interest in a commercial

9   property located at 1151 S. Boyle Avenue, Los Angeles, California (the "Property"), subject to

10   overbidding, on the terms and conditions set forth herein; (ii) the Debtor to pay the sole secured

11   creditor with a lien on the Property, City National Bank, from the sale proceeds upon close of the

12   sale; (iii) the employment and compensation of broker Lee & Associates Commerce, Inc.

13   ("Broker"), and designated agents David Brandt and Jeffrey M. Rinkov (collectively the

14   "Agents") to complete the sale of the property; and (iv) the Debtor to lease the Property to the

15   Buyer pending close of escrow for the sale of the Property on the terms described herein (the

16   "Motion").

17       This Motion is based upon the attached Memorandum of Points and Authorities, the

18   Declarations of L. Ramon Bonin and Jeffrey Rinkov, and supporting exhibits filed concurrently

19   herewith, all pleadings, papers and records on file with the Court and such other evidence, oral or

20   documentary, as may be presented to and considered by the Court, including prior to or at the

21   hearing of this Motion.

22       **IF YOU DO NOT OPPOSE THIS MOTION, you need take no further action.**

23       **IF YOU WISH TO OPPOSE THE MOTION, pursuant to Local Bankruptcy Rule**

24   **9013-1(f), your objections must be in writing and must be filed with the Bankruptcy Court**

25   **Clerk (with a duplicate copy) at the United States Courthouse, located at 411 West Fourth**

26   **Street, Suite 2030, Santa Ana, California 92701, and must be served upon the Debtor's**

27   **counsel, Nanette D. Sanders, at Ringstad & Sanders, LLP, located at 2030 Main Street,**

28   **Suite 1200, Irvine, California, 92614, and on the Office of the United States Trustee, located**

1  at 411 West Fourth Street, Suite 9041, Santa Ana, California, 92701, not less than fourteen

2  (14) days prior to the scheduled Court hearing.

3      **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f)(1)

4  further provides that any opposition is to consist of "A complete written

5  statement of all reasons in opposition thereto . . . declarations and copies of all photographs

6  and documentary evidence on which the responding party intends to rely, and any

7  responding memorandum of points and authorities".

8      **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(h)

9  provides that your failure to timely file and serve a response as set forth above may be

10  deemed by the Court to be your consent to the granting of the Motion.

11      WHEREFORE, the Debtor requests that the Court enter an Order:

12      (1)    authorizing the sale of the commercial property located at 1151 S. Boyle Avenue,

13  Los Angeles, California, to the proposed buyer on the terms set forth in the Sale Agreement (as

14  defined hereinafter), or to any qualified overbidder according to the terms and conditions set

15  proposed herein, free and clear of any liens, interests and encumbrances;

16      (2)    authorizing the payment of valid secured creditor claims, brokers' commissions

17  and costs of sale directly from the escrow;

18      (3)    approving the overbid procedures requested herein;

19      (4)    finding that the sale of the property was conducted in good faith within the

20  meaning of 11 U.S.C. § 363(m), and that the Debtor and buyer(s) of the property are entitled to

21  the benefits and protections of this subsection of the Bankruptcy Code;

22      (5)    authorizing the Debtor to sign any and all documents necessary and to undertake

23  any non-material amendments and modifications necessary to complete the sale of the property to

24  the highest qualified bidder without further notice, hearing or order of this Court;

25      (6)    authorizing the Debtor to employ the Broker and the Agents on the terms and

26  conditions set forth herein,

27      (7)    authorizing the Debtor to lease the Property to the Buyer pending the close of

28  escrow for the sale of the Property to Buyer on the terms described herein;

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    (8)    for waiver of the 10 day stay of FRBP 6004(g); and,

2    (9)    for such other and further relief as the Court deems just and proper.

3   Dated: April 21, 2010                    Respectfully Submitted,

4                                            RINGSTAD & SANDERS, LLP

5

6                                            By: _____
                                                 Nanette D. Sanders
7                                            Proposed General Insolvency Counsel for
                                             Dynamic Builders, Inc., Debtor
8                                            and Debtor-in-Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

- 4 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Ringstad & Sanders**
L.L.P.
1030 Main Street, 12th Floor
Irvine, California 92614
949-851-7450

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

A.    **Background Information.**

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code

on March 31, 2010 ("Petition Date"). Dynamic Builders, founded in 1964 by L. Ramon Bonin, is

a general contractor, principally involved in the construction of build to suit

commercial/industrial building in the Los Angeles area. The company buys land with the intent

to subdivide it into parcels or otherwise obtain necessary entitlements, develop the site, and

construct commercial/industrial buildings on a contract by contract basis. Occasionally, Dynamic

builds for speculative purposes.

The operations of Dynamic are overseen by Mr. Bonin, in his capacity as Chairman, and

his son Blaise Bonin, President and CEO. Mr. Bonin's son-in-law, Ken Jackson, serves as the

Director of Sales. Mr. Bonin and his wife Patricia (the "Bonins") are the sole shareholders of

Dynamic.

On March 31, 2010, the Bonins also commenced a voluntary Chapter 11 bankruptcy case.

The Bonins' Chapter 11 bankruptcy case is known as *In re Bonin*, U.S.B.C. Case No. 8:10-14067

TA. The Bonins are in the business of owning and operating real property assets, and own a total

of 18 such properties.

Historically Dynamic has funded the acquisition and development of specific sites through

(i) acquisition and construction loans from lending institutions, with such loans secured by the

project site and improvements; (ii) an unsecured, revolving line of credit with Comerica Bank;

and, (iii) in some instances, investment in specific projects by individuals in the form of

unsecured notes. In most if not all instances, the Bonins have guaranteed the loans which

financed the acquisition and construction of each project. Additionally, each secured lender has

been granted an assignment of leases and rents with respect to each property securing a specific

loan.

As of the Petition Date, the Debtor owned the following real properties:

| Property Address | Description |
|---|---|
| 3020-3250 East Washington Blvd Los Angeles, CA | Washington Food Center (cold storage and food processing facility) |
| 3000 East Washington Blvd Los Angeles, CA | Vacant Land |
| 1151-1155 South Boyle Avenue Los Angeles, CA | Four Industrial Buildings (two single-tenant, two multi-tenant) |
| 1135 South Boyle Avenue Los Angeles, CA | Boyle Vista – Building 1 Office and Warehouse Building (multi-tenant) |
| 1115 South Boyle Avenue Los Angeles, CA | Boyle Vista – Building 2 Office and Warehouse Building (multi-tenant) |
| 2035 Camfield Commerce, CA | Golds Gym/Mini Storage |
| 1000 East Olympic Boulevard Los Angeles, CA | Vacant Land |
| 1925 North Marianna Avenue 4671 Worth Los Angeles, CA | Vacant Land |
| 1115 South Boyle Avenue Los Angeles, CA | Vacant Land |
| 400 Hudson Lane San Leandro, CA | Vacant Land |
| 16000 Main Street Carson, CA | Industrial Condominium Project (two units, one sold) |
| 2900 Lugo Street Los Angeles, CA | Vacant Land |
| Washington Boulevard Los Angeles, CA | Vacant Land Site area part of Preferred 6 project (sold to iStar who is contractually obligated to deed back the excess land upon recording of a tract map) |
| 2830 East Washington Boulevard Los Angeles, C | Vacant Land |

As of the Petition Date, the Debtor owed real property taxes totaling a combined $399,671.55 resulting from its ownership of the above-described real properties. On April 7, 2010, the Debtor filed its emergency motion to obtain an order authorizing the Debtor to incur unsecured debt in the amount of $400,000 from the Bonins for the purpose of the payment of the

Ringstad & Sanders
L.L.P.
2030 Main Street , 13th Floor
Irvine, California 92614
949.851.7450

1  Debtor's real property taxes that were payable no later than April 10, 2010.  At the hearing held

2  on April 9, 2010, the Court authorized the Debtor to obtain the unsecured loan from the Bonins

3  and real property taxes for the above-referenced properties were paid in full.

4         Since the commencement of bankruptcy cases by the Debtor and the Bonins, said parties

5  have remained in possession of their respective properties, and continue to operate and manage

6  their business affairs as a debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and

7  1108.

8  **B.**     **Events Leading to the Chapter 11 Filings.**

9         **1.**     **Personal Guarantees Related to the Debtor.**

10        Although the properties owned by the Bonins in their individual capacity are

11 unencumbered, the Bonins are the principals and shareholders of the Debtor and have guaranteed

12 Debtor's financial obligations to its three secured lenders, Bank of America, City National Bank

13 and Citizens Business Bank.  The Debtor and the Bonins share a common interest with respect to

14 the payment of Debtor's obligations related to the real properties that it owns.  Moreover, as

15 result of the Bonins' personal guarantees, the financial difficulties of the Debtor resulting from

16 the economic downfall and deteriorating commercial real-estate market have impacted the

17 Bonins' affairs.

18        Historically, the Debtor has operated as a merchant builder, working with its customers,

19 under contract, to acquire and entitle land for development, and thereafter constructing buildings

20 to the client's specifications.  Upon completion, the finished buildings are sold to the client or an

21 investor located by the client who then leases the property to the client.  Of the properties listed

22 above that are presently owned by the Debtor, each was acquired and/or developed for a specific

23 client who subsequently was unable to perform on a purchase contract given market conditions

24 that developed in 2008 and 2009.  One of the potential buyers filed its own Chapter 11

25 bankruptcy proceeding, one of the buyers was unable to obtain financing, and the third buyer

26 back-out when the appraisal of the building did not support the required debt.  Of the six

27 completed projects, each was developed in 2008 and 2009, and in the aggregate the properties

28 presently have an overall occupancy of approximately 28%.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    In addition to the problems with low occupancies and failed sales from its completed

2  projects, each of the Debtor's remaining seven properties is vacant land that generates no income.

3    **2.    The Comerica Obligations.**

4    The Bonins are also co-borrowers with the Debtor on an unsecured obligation to Comerica

5  Bank related to an Amended and Restated Business Loan Agreement dated June 4, 2007 (the

6  "Comerica Loan Agreement"). Under the Comerica Loan Agreement, Comerica provided the

7  Debtor and the Bonins with certain credit facilities on a combined, co-borrower basis. Prior to

8  the Petition Date, the Debtor and the Bonins defaulted on the obligations to Comerica, and, as a

9  result thereof, in May 2009, Comerica gave the co-obligors notice that it had accelerated the

10  obligations due and later filed a complaint in the Orange County Superior Court against the

11  Debtor and the Bonins entitled Comerica Bank v. Dynamic Builders, Inc., et al., Case No. 30-

12  2009-00123616. In connection with this litigation Comerica filed an application for right to

13  attach order and writ of attachment against the Debtor and the Bonins.

14    **3.    The Failed Out of Court Work-Out Negotiations.**

15    Prior to the Petition Date, the Debtor and the Bonins had been in discussions with the

16  above-described secured lenders and Comerica to conduct an orderly liquidation of certain non-

17  productive real property holdings of the Debtor in order to make payments to the lenders and to

18  gain time for the Debtor and the Bonins to continue with leasing and sales of other completed

19  projects. However, final agreements could not be reached and, in an effort maximize the value of

20  their assets for all creditors, the Debtor and the Bonins commenced their respective Chapter 11

21  cases.

22    **C.    1151 S. Boyle Avenue.**

23    As set forth above, the Debtor is the owner of a commercial property located at 1151-1155

24  S. Boyle Avenue, Los Angeles, CA.   The property consists of four industrial buildings,

25  comprising approximately 155,771 square feet. Prior to the Petition Date, approximately 108,000

26  square feet of the property was sold to a clothing manufacturer.   The remaining 47,985 square

27  feet of the building is comprised of a single tenant industrial unit, more commonly known at 1151

28  S. Boyle Avenue, Los Angeles, CA (the "Property").

Ringstad & Sanders
L.L.P.
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

As set forth in the Declaration of L. Ramon Bonin attached hereto (the "Bonin Declaration"), the Property is encumbered by a first priority deed of trust in favor of City National Bank ("CNB Deed of Trust"). As of the Petition Date, the balance owing on the promissory note secured by the CNB Deed of Trust was approximately $4,793,388.    As set forth above, the real property taxes on the Property were paid in full on April 9, 2010. To the best of Debtor's knowledge, there are no other liens asserted against the Property.

**D.     Lee & Associates.**

In or around July 2009, the Debtor engaged Lee & Associates Commerce, Inc. ("Lee & Associates" and/or the "Broker") to market and sell the Property. Lee & Associates' has offices located throughout Southern California and the United States. Founded in 1979, Lee & Associates is considered an expert in commercial real estate leasing and sales transactions in the Southern California area, and supports a sales staff of highly qualified agents who are skilled in office, industrial, retail and investment real estate. Lee & Associates is the fourth largest commercial real estate sales organization in the country. Additional information about the Broker and its professionals can be found on its website, located at http://www.lee-associates.com.

By this Motion, the Debtor seeks to employ the Broker on behalf of the estate to complete the sale of the Property. The Broker was engaged by the Debtor in July, 2009 to market the Property for sale. As such, the Broker is very familiar with the Property, the surrounding area and comparable properties, as well as the sale contemplated by this motion (as discussed herein below).

The Debtor also seeks to employ David Brandt and Jeffrey Rinkov (collectively, the "Agents") as the designated agents. Mr. Brandt is a California licensed real estate agent and Senior Vice President at Lee & Associates. Mr. Brandt has been a licensed real estate agent since 1989 and specializes in the sale and leasing of commercial real property. Mr. Brandt works in the Broker's office located at Commerce, California. Mr. Rinkov is a California licensed real estate agent and is the President of Lee & Associates. Mr. Rinkov has been a licensed real estate agent for over fourteen years and specializes in the sale and leasing of commercial real property. Mr. Rinkov also works in the Broker's office located at Commerce, California. A copy of both

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1   Messrs. Brandt and Rinkov's resumes are attached as Exhibit "1" to the Declaration of Jeffrey

2   Rinkov (the "Rinkov Declaration") and incorporated by this reference.

3          Contingent upon Court approval, the Debtor proposes to employ Lee & Associates and the

4   Agents on the terms and conditions set forth in the Exclusive Right to Represent Owner for Sale

5   or Lease of Real Property dated July 17, 2009, as amended ("Listing Agreement"), a copy of

6   which is attached as Exhibit "2" to the Rinkov Declaration and incorporated by this reference.

7   The Broker has not received, and will not receive, a prepetition or postpetition retainer.  The

8   Broker's compensation upon close of escrow is set forth in Section F below.  The Broker and the

9   Agents have been informed and understand that no sale of the Property may be consummated

10  until after notice and hearing, and any proposed sale must be subject to overbidding.  As set forth

11  in the Rinkov Declaration, they are also aware of the provisions of 11 U.S.C. Section 328(a) and

12  understand that, notwithstanding the terms and conditions of employment herein set forth, the

13  Court may allow compensation different from the compensation provided in the Listing

14  Agreement if such terms and conditions prove to have been improvident in light of developments

15  unanticipated at the time of fixing of such terms and conditions.

16          **E.      The Proposed Sale and Lease.**

17          The Debtor, through its broker, has negotiated a sale of the Property to D & K Properties,

18  LLC ("D & K") for $6,718,000. A true and correct copy of the "Standard Offer, Agreement and

19  Escrow Instructions for the Purchase of the Real Estate and Addendum as modified by the

20  Amendment to Standard Offer, Agreement and Escrow Instructions for the Purchase of the Real

21  Estate and Addendum (collectively the "Sale Agreement") which has been executed by the

22  Debtor and D & K, is attached as Exhibit "3" hereto. An escrow for the sale of the Property was

23  opened with Commerce Escrow Company on March 31, 2010.  Escrow is to close by July 28,

24  2010, unless otherwise agreed to in writing by the parties, subject to the Bankruptcy Court

25  approving the sale.  Consistent with the terms of the proposed sale, D & K has made an initial

26  deposit in escrow in the sum of $335,000.  A second deposit of $335,000 will be made upon entry

27  of the Order of the Bankruptcy Court approving the proposed sale.  Per the terms of the Sale

28  Agreement, the deposits are to be released to Seller upon Court approval of the transaction and

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  prior to the close of escrow.

2      Following Court approval of this transaction, and pending close of escrow, Debtor has

3  agreed, at the sole election of D & K, to lease the Property to D & K or its related nominee (the

4  "Tenant"). The release of the escrow deposits shall be deemed to satisfy any obligation of the

5  Tenant to pay rent until first to occur of close of escrow or July 28, 2010. If escrow does not

6  close by July 28, 2010, then the Tenant shall thereafter be obligated to pay rent in the amount of

7  $40,320 per month, triple net.

8      The Debtor represents that this is an arms-length transaction and that it has no connection

9  with D & K other than the proposed transaction described herein. To the best of its knowledge,

10  the Debtor believes that neither D & K nor the principals of D & are related to anyone connected

11  with the Debtor, the Debtor's principals, the Debtor's counsel or the Debtor's Broker, nor are D

12  & K or its principals insiders of the Debtor. Moreover, as is shown by the Sale Agreement, D &

13  K is represented by its own broker in the proposed sale transaction, i.e., The Heger Company.

14  The Debtor and D & K understand and agree that the Sale Agreement and proposed sale are

15  subject to overbid and request that the Court approve the bidding procedures set forth below.

16  **G.**     **The Debtor Proposes to Sell the Property Free and Clear of Liens, Claims and**

17  **Encumbrances.**

18      As set forth above, the Property is encumbered by the CNB Deed of Trust. To that end,

19  the Debtor proposes to sell the Property free and clear of the CNB Deed of Trust and accordingly,

20  requests by this Motion authorization to pay City National Bank's valid secured claim from the

21  sale proceeds upon the close of escrow. The Debtor believes that payment of City National

22  Bank's claim is necessary and appropriate to avoid the further accrual of interest to this

23  oversecured creditor. The Debtor requests that the Order approving the sale provide that City

24  National Bank shall submit its demand for payment to escrow within ten days following the entry

25  of the Order approving the Sale. If the Debtor disputes the demand, escrow shall close without

26  disbursement to City National Bank, with the creditor's lien attaching to the sale proceeds. The

27  Debtor will place the disputed fund in a segregated account pending determination by the Court

28  as to the allowed amount of the creditor's claim. At Debtor's option, Debtor may authorize a

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    partial distribution to City National Bank upon the close of escrow of the portion of the claim as

2    to which there is no disagreement, and deposit funds sufficient to satisfy the disputed portion in a

3    segregated account pending

4         The Debtor further seeks an order of Court authorizing the distribution of the proceeds of

5    the sale of the Property through the escrow and contingent on, and payable at, the closing of

6    escrow, as follows:

7         1.    Real Estate Commissions - consistent with the terms of the Debtor's engagement

8    of the Broker and the Agents, payment of real estate commissions as follows: 5.5% of the gross

9    sales price, of which 3% shall go to the cooperating broker

10        2.    Closing Costs - normal "closing costs," which may include things such as the

11   Debtor's payment of the estate's share (pursuant to the terms of the Sale Agreement and local

12   custom) of escrow charges, recording fees, documentary transfer taxes, utilities, association dues

13   and charges, and other normal and customary charges, pro-rations, costs and fees.

## II.

## PROPOSED OVERBID PROCEDURES

16        In order to obtain the highest and best price for the benefit of the creditors of the estate,

17   the Debtor proposes that the sale be subject to overbid on the following terms:

18        A.    Only a qualified bidder may submit an overbid. A "qualified bidder" is an

19   individual or entity that provides a financial statement and such business and banking references

20   as are required in the Debtor's reasonable discretion to assure the Debtor of the bidder's ability to

21   consummate the purchase of the Property, and one who can consummate the purchase of the

22   property on the same terms and conditions, other than price, as those proposed in the Sale

23   Agreement.

24        B.    Each bid, as well as information and/or documentation establishing a bidders

25   qualification as a "qualified bidder," must be received by the Debtor no later than 4:00 p.m., two

26   (2) business days prior to the hearing on this Motion.

27        C.    The initial minimum overbid must be at least $50,000 over the amount of the

28   proposed sale price, which results in a minimum initial overbid of $6,768,000.  Subsequent

Ringstad & Sanders
—— L.L.P. ——
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    overbids shall be in increments as determined by the Court, but the Debtor suggests minimum

2    increments of $25,000.

3          D.      Each bid must be all cash, non-contingent, and on the same terms and conditions,

4    other than price, as those proposed in the current Sale Agreement between the Debtor and       D

5    & K.

6          E.      Each bidder must make an earnest money deposit of at least $335,000 which must

7    be tendered to the Debtor by no later than 4:00 p.m. on the second business day prior to the

8    hearing on this Motion. The deposit must be in the form of a cashier's check, certified check or

9    irrevocable letter of credit. Each bidder must further agree to make a second deposit of an

10   additional $335,000 promptly upon entry of an Order of this Court approving the sale to sich

11   bidder. Deposits for bidders whose bids are not accepted are to be promptly returned to the

12   bidders following the hearing on this Motion.

13         The Debtor believes that the foregoing procedures will provide for an orderly completion

14   of the sale of the Property by permitting all bidders to compete on similar terms, and will allow

15   all interested parties and the Court to compare competing bids in order to realize the greatest

16   possible benefit to the estate.

### III.

### THE COURT SHOULD AUTHORIZE THE SALE OF THE PROPERTY FREE AND

### CLEAR OF LIENS

20         Pursuant to 11 U.S.C. § 363(b)(1) and (f), the Debtor moves the Court to enter an Order

21   approving the sale of the Property as described herein, free and clear of liens, interests and

22   encumbrances, and further moves the Court to make a finding that the buyer is a "good faith

23   purchaser" pursuant to 11 U.S.C. § 363(m), and is entitled to the benefit and protection of said

24   section, such that any appeal of an Order granting this motion, even if successful, will not affect

25   the validity of the sale unless a stay pending appeal is obtained.

26         **A.  Bankruptcy Code Section 363(b) Authorizes The Debtor to Sell The Property.**

27         Bankruptcy Code section 363(b)(1) provides, in relevant part: "The trustee,  after notice

28   and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Sreet, 12th Floor
Irvine, California 92614
949.851.7450

1    the estate."  Bankruptcy Code §1107 gives to a debtor-in-possession all the rights and powers of

2    a trustee, as well as the obligation to perform all of the functions and duties of a trustee.

3        Although section 363(b) does not expressly articulate a standard for determining whether

4    a court should approve a sale, courts consistently apply an "articulated business judgment"

5    standard.  *See, In re Lionel*, 722 F.2d 1063, 1071-1071 (2nd Cir. 1983);   *In re Ionosphere Clubs,*

6    *Inc.*, 184 B.R. 648 (S.D.N.Y 1995).   To that end, the proponent of the sale must establish that

7    there is a sound business purpose of the sale and that the sale is in the best interests of the estate,

8    i.e., the sale is for a fair and reasonable price, that there is accurate and reasonable notice to

9    creditors and that the sale is made in good faith.  *In re Wilde Horse Enterprises, Inc.*, 136 B.R.

10   830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, supra, at 1069; *In re Industrial Valley*

11   *Refrig. & Air Cond.  Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). However, Section

12   363(b)(1) does not require that a court substitute its business judgment for that of the debtor.  *In*

13   *re Ionosphere, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989)*.  Rather, a court should ascertain

14   whether the debtor has articulated a sound business justification for the proposed transaction.

15   This interpretation of section 363(b)(1) is consistent with "the broad authority to operate the

16   business of the debtor…[which] indicates congressional intent to limit court involvement in

17   business decisions by a trustee…[so that] a court may not interfere with a reasonable business

18   decision made in good faith by a trustee.  *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D.

19   Fla.1982).

20       The Ninth Circuit, in *In re Walter*, 83 B.R. 14 (9th Cir. BAP 1988) adopted a flexible,

21   case-by-case test to determine whether the business purpose for a proposed sale justifies

22   disposition of property of the estate under § 363(b).  Specifically, in *Walter, supra*, 83 B.R. at 19-

23   20, quoting *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986), the BAP set

24   forth the following standard to be applied under 11 U.S.C. § 363(b):

25               Whether the proffered business justification is sufficient depends on

26               the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge

27               should consider all salient factors pertaining to the proceeding and,

28               accordingly,  act  to  further  the  diverse  interests  of  the  debtor,

- 14 -

1   creditors and equity holders, alike.  He might, for example, look to

2   such relevant factors as the proportionate value of the assets to the

3   estate as a whole, the amount of lapsed time since the filing, the

4   likelihood that a plan of reorganization will be proposed and

5   confirmed in the near future, the effect of the proposed disposition

6   on future plans or reorganization, the proceeds to be obtained from

7   the disposition vis-à-vis any appraisal of the property, which of the

8   alternatives of use, sale or lease the proposal envisions and, most

9   importantly perhaps, whether the asset is increasing or decreasing in

10  value.  This list is not intended to be exclusive but merely to provide

11  guidance to the bankruptcy judge.

12      In the instant case, the facts and circumstances surrounding the sale of the Property

13  support the Debtor's decision that the proposed sale is in the best interests of the estate.

14      **1.**      **A Sound Business Purpose Justifies the Proposed Sale.**

15      As described above, the Debtor holds title to various real properties that it intends to sell

16  during this Chapter 11 proceeding.  The proceeds of those sales will enable the Debtor to repay

17  all or a substantial portion of the outstanding debts of the Debtor.

18      This Motion contemplates the sale of the Property for $6,718,000.  This property is one of

19  six completed properties and seven parcels of vacant land owned by the Debtor.  The Property

20  has been listed for sale since July 2009 and the proposal from D & K constitutes the best and

21  highest offer the Debtor has received to date for the Property.  Approval of the proposed sale by

22  the Court would have the following beneficial effects for the bankruptcy estate and its unsecured

23  creditors:

24      (1)      the Debtor's bankruptcy estate will net in excess of $1 million from the proceeds

25              of the sale of the Property, which will be used for the payment of administrative

26              expenses and unsecured claims;

27      (2)      The first priority secured claim of City National Bank, totaling approximately

28              $4,793,388, will be satisfied in full from the proceeds of the sale;

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1        (3)     The sale will avoid the accrual of additional interest and other charges as provided

2        by 11 U.S.C. Section 506(b).

3       In sum, the sale of the Property will generate funds that will be used to pay the allowed

4 claims against the estate. The Debtor has concluded that it is within its business judgment and is

5 in the best interest of this bankruptcy case, the estate and the creditors, to conclude the sale of the

6 Property as proposed herein. Accordingly, there is a sound business purpose for the sale.

7       **2.**     **Fair and Reasonable Price.**

8       As is set forth in the attached Bonin Declaration, the Property has been marketed by the

9 Debtor's broker for an extended period of time, and D & K's offer to purchase the Property for

10 $6,718,000 is the highest and best offer that the Debtor has been able to obtain.

11       Moreover, in order to obtain the highest and best offer for the benefit of creditors of this

12 estate, the Debtor also seeks Court approval of the overbid procedures set forth above. The

13 Debtor has determined that it would benefit the estate by permitting all interested parties to

14 receive information and bid for the Property instead of selling it to the proposed buyer on an

15 exclusive basis.

16       **3.**     **Accurate and Reasonable Notice.**

17       The Debtor intends to serve the notice on all creditors and interested parties within the

18 time period prescribed by the Local Bankruptcy Rules. As such, it is expected that the notice of

19 this Motion will satisfy the requirements for accurate and reasonable notice and will be

20 appropriate under the circumstances.

21       **4.**     **Good Faith.**

22       In this case, the proposed sale is to an unrelated third party and is an arms-length

23 transaction. The proposed buyer, D & K, is represented by its own broker and agent. The

24 Property has been exposed to the open market for a considerable period of time and the Buyer's

25 offer represents the best offer received by the Debtor. The sale has been brought in good faith

26 and as set forth above, the proposed sale price is fair and reasonable and should be approved.

27 ///

28 ///

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

**B.  The Debtor May Sell the Property Free and Clear of the CNB Deed of Trust.**

As set forth above, the Property is subject to the CNB Deed of Trust.  By this Motion, the Debtor requests that the Court authorize the Debtor to sell the Property free and clear of the CNB Deed of Trust, pursuant to Bankruptcy Code section 363(f).  Section 363(f) of the Bankruptcy Code allows a Debtor to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

(1)    applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or,

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens. *See, e.g., Citicorp Homeowners Services, Inc. v. Elliott (In re Elliott)*, 94 B.R. 343, 345 (Bankr. W.D. Tex. 1989).

Applied here, the Debtor believes it has satisfied several of the five conditions outlined by section 363(f).  First, as set forth in detail above, the Debtor is informed and believes that City National Bank will consent to the sale of the property free and clear of its Deed of Trust.  Thus, the Debtor believes that it has satisfied the conditions of section 363(f)(2).  Second, City National Bank's lien totals approximately $4,793,388 plus accrued post-petition interest.  Since the proposed sale to D & K is for $6,718,020 and is well in excess of the aggregate value of City National Bank's lien, the conditions of section 363(f)(3) are satisfied.  Last, based upon the Debtor's review of the public records, the Debtor is not aware of any other liens, claims or encumbrances asserted against the Property.  As a result, if any party were to assert an interest in the Property, the Debtor would almost certainly dispute the validity of such interest, thereby

Ringstad & Sanders
L.L.P.
2030 Main Street , 13th Floor
Irvine, California 92614
949.851.7450

1    making it subject to a bond fide dispute, satisfying the conditions of section 363(f)(4). *See also,*

2    *In re Octagon Roofing,* 123 B.R. 583, 590 (Bankr. N.D. Ill 1991) ("The bank's assertion of its

3    second mortgage security interest may ultimately prove to be voidable as a preference or a

4    fraudulent conveyance. In this regard, the Debtor has presented a bona fide dispute under 11

5    U.S.C.. § 363(f)(4)."). In sum, the Debtor has demonstrated that approving the sale of the

6    Property free and clear of any liens, claims or encumbrances is appropriate.

7        Given the oversecured status of City National Bank, the Debtor seeks authorization to pay

8    the secured claim from the net proceeds of the proposed sale so as to avoid the accrual of

9    additional interest and other charges as provided by 11 U.S.C. Section 506(b).

10                                        **IV.**

11            **D & K IS A PURCHASER IN "GOOD FAITH"**

12        **IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 363(M)**

13        "When a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is

14    required to make a finding with respect to the "good faith" of the purchaser.' *In re Abbotts*

15    *Dairies, Inc.,* 788 F.2d 143, 149-150 (3rd. Cir. 1986). The purpose of such a finding is to

16    facilitate the operation of the Bankruptcy Code section 363(m), which provides a safe harbor for

17    purchases of a debtor's property that have acted in "good faith."

18        In this case, it is clear that D & K is entitled to the safe harbor provided by section

19    363(m). As set forth in the Bonin declaration, the Debtor has demonstrated that the negotiations

20    between D & K and the Debtor were at all times conducted at arms-length and in good faith.

21    D & K is represented by its own agent. D & K and its principals are unrelated to the Debtor and

22    its principals and are not insiders of the Debtor. Throughout the negotiations with D & K, the

23    Debtor has acted with the sole purpose of obtaining the best price for the Property. The Property

24    has been exposed to the marketplace for a considerable period of time and the offer from D & K

25    is the best offer that has been received for the Property. Based upon these facts, the Court may

26    find that D & K is a good faith purchaser within the meaning of Section 363(m) of the

27    Bankruptcy Code.

28    ///

Ringstad & Sanders LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

## V.

## THE BANKRUPTCY COURT HAS THE AUTHORITY
## TO APPROVE THE BIDDING PROCEDURES

Implementation of the bidding procedures is an action outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Furthermore, under Section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, pursuant to Sections 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures.

The Ninth Circuit, in a case under the Bankruptcy Act, recognized the power of a bankruptcy court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets. *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982). The *Crown Corporation* court entered an order specifying the minimum consideration required for an overbid as well as the particular contractual terms required to be offered by overbidders. *Id.* at 777. The *Crown Corporation* decision also approves of an order requiring and setting the amount of potential overbidders' deposits and authorized courts to determine the disposition of such deposits. *Id.* While the discussion is not extensive, the *Crown Corporation* decision recognizes the inherent authority of bankruptcy courts to order the implementation of bidding procedures such as those proposed in the present case.

### A.    The Proposed Procedures are Untainted by Self-Dealing.

The proposed overbid procedure has been presented in good faith and has been negotiated on an "arms length" basis. Therefore, the dealings between the Debtor and the proposed buyer are not tainted.

### B.    The Proposed Procedures Encourage Bidding and are Fair in Amount.

The overbid procedures are designed to encourage, not hamper, bidding and are reasonable under the circumstances. This sale motion is intended to provide potential overbidders with adequate information to make an informed decision as to the amount of their bid.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

**C.    The Proposed Bidding Procedures are Fair, Reasonable and Serve the Best Interests of the Estate.**

The proposed bidding procedures serve the estate in several ways.  First, the procedures themselves are fair, reasonable and productive; they will permit the Debtor to conduct an orderly sale of the property and obtain the best possible price on the best possible terms.  Second, the bidding procedures are a necessary component of the Debtor's sale of the Property.

The bidding procedures will ensure that all bids will be comparable.  If competing bids are received, the Debtor will determine which bid is the highest and best for the Debtor's bankruptcy estate.  The comparability requirement of the bidding procedures will make it possible to accomplish this task.

The bidding procedures will help the Debtor to obtain the highest and best price for the Property.  The procedures institute minimum overbid increments which the Debtor believes are reasonable.  Thus, if competing bids are received, the Debtor will be able to obtain substantial benefit for this estate from the sale of the Property. The bidding procedures require potential bidders to deposit certified funds prior to the hearing.  It would be a serious loss to the estate if the Debtor surrendered the opportunity to sell the Property to the proposed buyer in favor a competing bidder, only to later discover that the bidder is incapable of consummating the transaction.  Thus, requiring bidders to make a substantial deposit will protect the bankruptcy estate from such a loss.

**VI.**

**THE COURT SHOULD AUTHORIZE THE DEBTOR**

**TO EMPLOY LEE & ASSOCIATES AND THE AGENTS**

As set forth above, the Debtor requests that it be authorized to employ Lee & Associates and the Agents on the terms and conditions set forth herein. The Broker and the Agents were engaged pre-petition by the Debtor to market and sell the Property, but otherwise have no connection or relationship with the Debtor.

///

- 20 -

Section 327(a) of the United States Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the trustee in carrying out the trustee's duties under this title.

**A.  The Broker and Agents Do Not Hold An Interest Adverse To The Estate.**

An interest is "adverse" if it (i) is an economic interest that would tend to lessen the value of the bankruptcy estate; or (ii) would create either an actual or potential dispute in which the estate is a rival claimant. *See, In re National Liquidators, Inc.*, 182 B.R. 186, 191 (S.D. Ohio 1995); *See also, In re Kliegl Bros. Universal Electric Stage Lighting Co., Inc.*, 189 B.R. 874, 879-881 (Bankr. E.D.N.Y. 1995).

In the present case, as set forth in the Rinkov Declaration, neither the Broker, nor any of its professionals, including the Agents, hold or represent any interest that would lessen the value of the bankruptcy estate.   Moreover, representation of the estate and/or the Debtor by the Broker and the Agents will not create a conflict.  Accordingly, the Broker and Agents do not hold or represent any adverse interest in connection with this case.

**B.  The Broker and The Agents Are Disinterested.**

As set forth in the Rinkov Declaration, the Broker and the Agents are disinterested person(s) within the meaning of 11 U.S.C. Section 101(14), in that the Broker, and any of the professionals retained by it, including the Agents:

(a)  is/are not a creditor, an equity security holder, or an insider of the Debtor;

(b)  is/are not and was/were not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtor; and

(c)  does/do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    In sum, the Broker and the Agents meet the requirements for employment under the

2    Bankruptcy Code, and the Court should authorize the proposed employment pursuant to 11

3    U.S.C. § 327.

## VII.

## CONCLUSION

6    Based on the foregoing, the Debtor respectfully requests that the Court enter an Order:

7    (1)    authorizing the sale of the Property, to D & K on the terms set forth in the Sale

8    Agreement, or to any qualified overbidder according to the terms and conditions set proposed

9    herein, free and clear of any liens, interests and encumbrances, and specifically, the CNB Deed of

10   Trust;

11   (2)    authorizing the Debtor to pay directly from escrow the valid claims of CNB,

12   brokers' commissions and costs of sale;

13   (3)    approving the overbid procedures requested herein;

14   (4)    finding that the sale of the Property was conducted in good faith within the

15   meaning of 11 U.S.C. § 363(m), and that the Debtor and buyer(s) of the Property are entitled to

16   the benefits and protections of this subsection of the Bankruptcy Code;

17   (5)    authorizing the Debtor to sign any and all documents necessary and to undertake

18   any non-material amendments and modifications necessary to complete the sale of the Property to

19   the highest qualified bidder without further notice, hearing or order of this Court;

20   (6)    authorizing the Debtor to employ Lee & Associates and the Agents on the terms

21   and conditions set forth herein,

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    (7)    authorizing the Debtor to lease the Property to the Buyer or Buyer's nominee

2    pending the close of escrow for the sale of the Property to Buyer on the terms described herein;

3    (8)    or such other and further relief as the Court deems just and proper.

4    Dated: April 21, 2010             Respectfully Submitted,

5                                      RINGSTAD & SANDERS, LLP

6

7                                      By: _____

8                                          Nanette D. Sanders
                                           Proposed General Insolvency Counsel for
                                           Dynamic Builders, Inc., Debtor
9                                          and Debtor-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF L. RAMON BONIN

I, L. Ramon Bonin, declare as follows:

1. I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.

2. My wife Patty A. Bonin and I are the debtors and debtors-in-possession in the bankruptcy case of In re L. Ramon Bonin and Patty A. Bonin, Case No. 8:10-bk-14067 TA. We filed a petition under Chapter 11 of the Bankruptcy Code on March 31, 2010 ("Petition Date") and have continued in the possession of our property and the management of our affairs.

3. My wife and I have been in the real estate development, construction, and sales business for many years. We directly own seventeen properties in Los Angeles, Orange, Riverside and San Bernardino Counties and an additional building subject to a ground lease located in San Bernardino County.

4. My wife and I also own 100% of the common stock of Dynamic Builders, Inc. ("Debtor" and/or "Dynamic"), a general contractor, principally involved in the construction of build to suit commercial/industrial building in the Los Angeles area. The company buys land with the intent to subdivide it into parcels or otherwise obtain necessary entitlements, develop the site, and construct commercial/industrial buildings on a contract by contract basis. Occasionally, Dynamic builds for speculative purposes.

5. The operations of Dynamic are overseen by me, in my capacity as Chairman, and my son Blaise Bonin, President and CEO. Ken Jackson, who is also my son-in-law, serves as the Director of Sales.

6. Historically Dynamic has funded the acquisition and development of specific sites through (i) acquisition and construction loans from lending institutions, with such loans secured by the project site and improvements; (ii) an unsecured, revolving line of credit with Comerica Bank; and, (iii) in some instances, investment in specific projects by individuals in the form of unsecured notes. In most if not all instances, my wife and I have guaranteed the loans which financed the acquisition and construction of each project. Additionally, each secured lender has

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

been granted an assignment of leases and rents with respect to each property securing a specific loan.

7.      As of the Petition Date, Dynamic owns the following real properties:

| Property Address | Description |
|---|---|
| 3020-3250 East Washington Blvd<br>Los Angeles, CA | Washington Food Center<br>(cold storage and food processing facility) |
| 3000 East Washington Blvd<br>Los Angeles, CA | Vacant Land |
| 1151-1155 South Boyle Avenue<br>Los Angeles, CA | Four Industrial Buildings (two single-tenant, two multi-tenant) |
| 1135 South Boyle Avenue<br>Los Angeles, CA | Boyle Vista – Building 1<br>Office and Warehouse Building (multi-tenant) |
| 1115 South Boyle Avenue<br>Los Angeles, CA | Boyle Vista – Building 2<br>Office and Warehouse Building (multi-tenant) |
| 2035 Camfield<br>Commerce, CA | Golds Gym/Mini Storage |
| 1000 East Olympic Boulevard<br>Los Angeles, CA | Vacant Land |
| 1925 North Marianna Avenue<br>4671 Worth<br>Los Angeles, CA | Vacant Land |
| 1115 South Boyle Avenue<br>Los Angeles, CA | Vacant Land |
| 400 Hudson Lane<br>San Leandro, CA | Vacant Land |
| 16000 Main Street<br>Carson, CA | Industrial Condominium Project (two units, one sold) |
| 2900 Lugo Street<br>Los Angeles, CA | Vacant Land |
| Washington Boulevard<br>Los Angeles, CA | Vacant Land<br>Site area part of Preferred 6 project (sold to iStar who is contractually obligated to deed back the excess land upon recording of a tract map) |
| 2830 East Washington Boulevard<br>Los Angeles, CA | Vacant Land |

8.      Dynamic filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 31, 2010.

9.      As of the Petition Date, the Debtor owed real property taxes totaling a combined $399,671.55 resulting from its ownership of the above-described real properties, and such taxes

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    would be overdue on April 11, 2010.  On April 7, 2010, the Debtor filed its emergency motion to

2    obtain an order authorizing the Debtor to incur unsecured debt in the amount of $400,000 from

3    my wife and I for the purpose of the payment of the Debtor's real property taxes that are payable

4    no later than April 10, 2010.   At the hearing held on April 9, 2010, the Court authorized the

5    Debtor to obtain the unsecured loan from my wife and me, and property taxes for the above-

6    referenced properties were paid in full.

7        10.      Since the commencement of our respective bankruptcy cases, the Debtor, as well

8    as my wife and I, have remained in possession of our respective property, and continue to operate

9    and manage our business affairs as a debtors-in-possession.

10       11.      Although the properties owned by my wife and me in our individual capacity are

11   unencumbered, we are the principals and shareholders of the Debtor and have guaranteed

12   Debtor's financial obligations to its three secured lenders, Bank of America, City National Bank

13   and Citizens Business Bank.  The Debtor and my wife and I share a common interest with respect

14   to the payment of Debtor's obligations related to the real properties that it owns.  Moreover, as

15   result of the personal guarantees given by my wife and me, the financial difficulties of the Debtor

16   resulting from the economic downfall and deteriorating commercial real-estate market have

17   impacted our personal financial affairs.

18       12.      Of its completed real property projects, Debtor's properties were built in 2008 and

19   2009.  Of the six completed projects, the overall occupancy is approximately 28%.  In addition,

20   although Debtor had been in negotiations to sell three of the completed projects to three different

21   buyers, none of the planned sales closed.  One of the potential buyers filed its own Chapter 11

22   bankruptcy proceeding, one of the buyers was unable to obtain financing, and the third buyer

23   backed out when the appraisal of the building did not support the required debt.

24       13.      In addition to the problems with low occupancies and failed sales from its

25   completed projects, each of the Debtor's remaining seven properties is vacant land that generates

26   no income.  Cash flow problems with the Debtor's properties have adversely impacted the

27   personal finances of my wife and me.

28   ///

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

14. My wife and I are also co-borrowers with Debtor on the obligations to Comerica Bank related to an Amended and Restated Business Loan Agreement dated June 4, 2007 (the "Comerica Loan Agreement"). Under the Comerica Loan Agreement, Comerica provided the Debtor, as well as my wife and I, with certain credit facilities on a combined, co-borrower basis. Prior to the Petition Date, the Debtor, my wife and I defaulted on our obligations to Comerica, and, as a result thereof, in May 2009, Comerica gave the us each notice that it had accelerated the obligations due and it later filed a complaint in the Orange County Superior Court against each of us entitled <u>Comerica Bank v. Dynamic Builders, Inc., et al.</u>, Case No. 30-2009-00123616. In connection with this litigation Comerica filed an application for right to attach order and writ of attachment against the Debtor, my wife and I.

15. Prior to the Petition Date, the Debtor, and my wife and I, had been in discussions with the above-described secured lenders to conduct an orderly liquidation of certain non-productive real property holdings of the Debtor in order to make payments to the lenders and to gain time for us to continue with leasing and sales of other completed projects. However, final agreements could not be reached and, in an effort maximize the value of our assets for all creditors, the Debtor, my wife and I commenced their respective Chapter 11 cases.

16. As set forth above, prior to the Petition Date the Debtor was the owner of a commercial property located at 1151-1155 S. Boyle Avenue, Los Angeles, CA. The property consists of four industrial buildings, comprising approximately 155,771 square feet. Prior to the Petition Date, approximately 108,000 square feet of the property was sold to a clothing manufacturer. The remaining 47,985 square feet of the building is comprised of a single tenant industrial unit, more commonly known at 1151 S. Boyle Avenue, Los Angeles, CA (the "Property").

17. I am informed and believe that the Property is encumbered by a first priority deed of trust in favor of City National Bank ("CNB Deed of Trust"). I am further informed and believe that the balance owing on the promissory note secured by the CNB Deed of Trust as of the date of filing was approximately $4,793,388. As set forth above, the real property taxes on the Property have been paid in full. To the best of my knowledge, there are no other outstanding liens asserted

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    against the Property.

2         18.      In or around July 2009, the Debtor engaged Lee & Associates Commerce, Inc.

3 ("Lee & Associates" and/or the "Broker") to market and sell the Property. The Broker is very

4 familiar with the Property, the surrounding area and comparable properties, as well as the sale

5 contemplated by this motion.  The Debtor, through the Broker, has negotiated a sale of the

6 Property to D & K Properties, LLC ("D & K") for $6,718,000.  A true and correct copy of the

7 "Standard Offer, Agreement and Escrow Instructions for the Purchase of the Real Estate and

8 Addendum as modified by the Amendment to Standard Offer, Agreement and Escrow

9 Instructions for the Purchase of the Real Estate and Addendum (collectively the "Sale

10 Agreement") which has been executed by the Debtor and D & K, is attached as Exhibit "3"

11 hereto. On March 31, 2010, an escrow for the sale of the property was opened with Commerce

12 Escrow Company.  Escrow is to close by July 28, 2010, unless otherwise agreed to in writing by

13 the parties, subject to the Bankruptcy Court approving the sale.  Consistent with the terms of the

14 proposed sale, D & K has made an initial deposit in to escrow in the sum of $335,000.  A second

15 deposit of $335,000 will be made upon entry of the Order of the Bankruptcy Court approving the

16 proposed sale.  Per the terms of the Sale Agreement, the deposits are to be released to Seller upon

17 deposit thereof prior to the close of escrow.

18         19.      Following Court approval of this transaction, and pending close of escrow, Debtor

19 has agreed, at the sole election of D & K, to lease the Property to D & K or its related nominee

20 (the "Tenant").  The release of the escrow deposits shall be deemed to satisfy any obligation of

21 the Tenant to pay rent until first to occur of close of escrow or July 28, 2010.  If escrow does not

22 close by July 28, 2010, then the Tenant shall thereafter be obligated to pay rent in the amount of

23 $40,320 per month, triple net.

24         20.      I believe that D & K's offer to purchase the Property for $6,718,000 is fair and

25 reasonable.  The Property has been on the market since July 2009, and D & K's offer to purchase

26 the Property for $6,718,000 is the highest and best offer that we have been able to obtain.

27         21.      To the best of my knowledge, the proposed transaction with D & K is an arms-

28 length transaction and the Debtor has no connection with D & K other than the proposed

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    transaction described herein.  To the best of my knowledge, I  believe that neither D & K nor the

2    principals of D & are related to anyone connected with the Debtor, the Debtor's principals, the

3    Debtor's counsel or the Debtor's Broker, nor are D & K or its principals insiders of the Debtor.

4    Moreover, as is shown by the Sale Agreement, D & K is represented by its own broker in the

5    proposed sale transaction, i.e., The Heger Company.

6        I declare under penalty of perjury under the laws of the United States of America that the

7    foregoing is true and correct.  Executed on April **21**, 2010, at _____*Irvine*_____, California.

8

9                                L. Ramon Bonin

Ringstad & Sanders
L.L.P.
2030 Main Street , 12th Floor
Irvine, California 92614
949.851.7450

### DECLARATION OF JEFFREY M. RINKOV

I, Jeffrey M. Rinkov, declare as follows:

1.    I am an individual over the age of eighteen and am the President at Lee & Associates Commerce, Inc. ("Lee & Associates" and/or the "Broker"). The matters set forth herein are personally known to me to be true, except those matters set forth on information and belief; and as to those matters, I am informed and believe them to be true, and I am authorized to submit this declaration on behalf of Lee & Associates. If called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.

2.    Lee & Associates' corporate office is located in Commerce, California, with an additional offices located throughout Southern California and the United States. Founded in 1979, Lee & Associates is considered an expert in commercial real estate leasing and sales transactions in the Southern California area, and supports a sales staff of highly qualified agents who are skilled in office, industrial, retail and investment real estate. Lee & Associates is the fourth largest commercial real estate sales organization in the country. Additional information about the Broker and its professionals can be found on its website, located at http://www.lee-associates.com.

3.    I have been a California licensed real estate agent for over fourteen years and specialize in the sale and leasing of commercial real property. I work through Lee & Associates' office located at Commerce, California. David Brandt is the Senior Vice President of Lee & Associates and has been a California licensed real estate agent since 1989. Mr. Brandt works through Lee & Associates' office located at Commerce. True and correct copies of our professional resumes and information regarding Lee & Associates are attached hereto collectively as Exhibit "1".

4.    Contingent upon Court approval, the Debtor proposes to enter into and employ Lee & Associates, Mr. Brandt and me to complete the sale of the real property located at 1151 S. Boyle Avenue, Los Angeles, CA (the "Property") on the terms and conditions set forth in the Exclusive Right to Represent Owner for Sale or Lease of Real Property dated July 17, 2009, as

*Ringstad & Sanders LLP.*
*2030 Main Street, 12th Floor*
*Irvine, California 92614*
*949.851.7450*

1  amended (collectively, the "Listing Agreement"), a copy of which is attached hereto as Exhibit

2  "2".

3       5.    Neither Lee & Associates, Mr. Brandt nor I have received, and will not receive, a

4  prepetition or postpetition retainer.  Pursuant to the terms set forth in the Listing Agreement, the

5  Debtor proposes to pay the following commission for the sale of the Property:  5.5% of the gross

6  sales price, of which 3% shall go to the cooperating broker.

7       6.    Lee & Associates, Mr. Brandt and I have been informed and understand that no

8  sale of the Property may be consummated until after notice and hearing, and any proposed sale

9  must be subject to overbidding.  We are also aware of the provisions of 11 U.S.C. Section 328(a)

10  and understand that, notwithstanding the terms and conditions of employment herein set forth, the

11  Court may allow compensation different from the compensation provided in the Listing

12  Agreement if such terms and conditions prove to have been improvident in light of developments

13  unanticipated at the time of fixing of such terms and conditions.

14       7.    To the best of my knowledge, Lee & Associates, Mr. Brandt, and I are

15  disinterested person(s) within the meaning of 11 U.S.C. Section 101(14), in that we:

16      (a)    is/are not a creditor, an equity security holder, or an insider of the Debtor;

17      (b)    is/are not and was/were not, within 2 years before the date of the filing of

18          the petition, a director, officer or employee of the Debtor; and

19      (c)    does/do not have an interest materially adverse to the interest of the estate

20          or of any class of creditors or equity security holders, by reason of any

21          direct or indirect relationship to, connection with, or interest in, the Debtor

22          or for any other reason.

23      As noted above, Lee & Associates, Mr. Brandt and I were engaged pre-petition by the

24  Debtor to market and sell the Property, but otherwise have no connection or relationship with the

25  Debtor.

26  ///

27  ///

28  ///

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1        I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct to the best of my knowledge.  Executed this _21_ day of April, 2010,

3    at _Commerce_, California.

4

5

6    _____
     Jeffrey Rinkov

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949-851-7450