1  Todd C. Ringstad - State Bar #97345
   todd@ringstadlaw.com
2  Nanette D. Sanders – State Bar #120169
   nanette@ringstadlaw.com
3  Christopher A. Minier – State Bar # 190705
   cminier@ringstadlaw.com
4  **RINGSTAD & SANDERS, LLP**
   2030 Main Street, Suite 1200
5  Irvine, CA 92714
   Telephone: (949) 851-7450
6  Facsimile: (949) 851-6926

7  General Insolvency Counsel for
   Dynamic Builders, Inc.

8

9              **UNITED STATES BANKRUPTCY COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

11

12  In re                                  Case No. 8:10-14151 TA

13  DYNAMIC BUILDERS, INC., a              Chapter 11 Proceeding
    California corporation;
14                                         **NOTICE OF MOTION AND MOTION OF
                                           DEBTOR FOR ORDER: (1) APPROVING
15           Debtor and                    SALE OF COMMERCIAL PROPERTY
             Debtor-in-Possession.         FREE AND CLEAR OF LIENS, CLAIMS
16                                         AND ENCUMBRANCES PURSUANT TO
                                           BANKRUPTCY CODE SECTIONS 363(b),
17                                         363(f) AND 363(m); (2) APPROVING
                                           OVERBID PROCEDURES; (3)
18                                         AUTHORIZING DEBTOR TO PAY
                                           SECURED CLAIM IN FULL FROM NET
19                                         SALE PROCEEDS; AND (4) AUTHORIZING
                                           PAYMENT OF COMMISSION TO REAL
20                                         ESTATE BROKER, LEE & ASSOCIATES
                                           COMMERCE, INC., AND AGENTS DAVID
21                                         BRANDT AND JEFFREY RINKOV;
                                           MEMORANDUM OF POINTS AND
22                                         AUTHORITIES; DECLARATION OF L.
                                           RAMON BONIN IN SUPPORT THEREOF**
23
                                           **[1121 & 1123 South Boyle Avenue, Los
24                                         Angeles, California]**

25                                         HEARING:
                                           DATE:    September 29, 2010
26                                         TIME:    11:00 a.m.
                                           PLACE:   Courtroom 5B,
27                                                   United States Bankruptcy Court
                                                    411 W. Fourth Street
28                                                   Santa Ana, CA

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1

2    **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES**

3    **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND**

4    **OTHER INTERESTED PARTIES:**

5        **PLEASE TAKE NOTICE** that on September 29, 2010, at 11:00 a.m., in Courtroom 5B

6    of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701,

7    before the Honorable Theodor C. Albert, United States Bankruptcy Judge, Dynamic Builders,

8    Inc., a California corporation, the debtor and debtor-in-possession herein ("Debtor"), will, and

9    hereby does, move the Court for an Order authorizing:

10        (i)    the sale of the estate's interest in a commercial property located at 1121

11    and 1123 South Boyle Avenue, Los Angeles, California (the "Property"), to Kwangshik

12    Kim and Lucy Hyeyoung Kim (hereafter the "Buyers"), subject to overbidding, on the

13    terms and conditions set forth herein and in the documents attached hereto;

14        (ii)    the Debtor to pay the sole secured creditor with a lien on the Property, City

15    National Bank, from the sale proceeds upon close of the sale;

16        (iii) the Debtor's payment of commission to its broker, Lee & Associates

17    Commerce, Inc. ("Broker"), and its designated agents David Brandt and Jeffrey M.

18    Rinkov (collectively the "Agents"); and

19        (iv) authorizing Debtor's removal of the non-load bearing demising wall between

20    the two portions of the Property being sold, i.e., the wall between 1121 and 1123 South

21    Boyle Avenue, and the reimbursement to Debtor of the costs associated therewith from

22    the escrow, which reimbursement shall not exceed $10,000.00.

23    This Motion is based upon the attached Memorandum of Points and Authorities, the

24    Declaration of L. Ramon Bonin, and supporting exhibits attached hereto, all pleadings, papers and

25    records on file with the Court and such other evidence, oral or documentary, as may be presented

26    to and considered by the Court, including prior to or at the hearing of this Motion.

27    **IF YOU DO NOT OPPOSE THIS MOTION, you need take no further action.**

28    **IF YOU WISH TO OPPOSE THE MOTION, pursuant to Local Bankruptcy Rule**

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    9013-1(f), your objections must be in writing and must be filed with the Bankruptcy Court

2    Clerk (with a duplicate copy) at the United States Courthouse, located at 411 West Fourth

3    Street, Suite 2030, Santa Ana, California 92701, and must be served upon the Debtor's

4    counsel, Todd C. Ringstad, at Ringstad & Sanders LLP, located at 2030 Main Street, Suite

5    1200, Irvine, California, 92614, and on the Office of the United States Trustee, located at

6    411 West Fourth Street, Suite 9041, Santa Ana, California, 92701, not less than fourteen

7    (14) days prior to the scheduled Court hearing.

8    **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f)(1)

9    further provides that any opposition is to consist of "A complete written

10    statement of all reasons in opposition thereto . . . declarations and copies of all photographs

11    and documentary evidence on which the responding party intends to rely, and any

12    responding memorandum of points and authorities".

13    **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(h)

14    provides that your failure to timely file and serve a response as set forth above may be

15    deemed by the Court to be your consent to the granting of the Motion.

16    WHEREFORE, the Debtor requests that the Court enter an Order:

17    (1)    authorizing the sale of the commercial real Property located at 1121 and 1123

18    South Boyle Avenue, Los Angeles, California, to the proposed Buyers on the terms set forth

19    herein and in the Sale Agreement (as defined hereinafter), or to any qualified overbidder

20    according to the terms and conditions proposed herein, free and clear of any liens, interests and

21    encumbrances;

22    (2)    authorizing the payment of valid secured creditor claims, brokers' commissions

23    and costs of sale directly from the escrow;

24    (3)    approving the overbid procedures requested herein;

25    (4)    finding that the sale of the Property has been conducted in good faith within the

26    meaning of 11 U.S.C. § 363(m), and that the Debtor and the successful purchaser(s) of the

27    Property are entitled to the benefits and protections of this subsection of the Bankruptcy Code;

28

Ringstad & Sanders
LLP.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1        (5)    authorizing the Debtor to sign any and all documents necessary and to undertake

2   any non-material amendments and modifications necessary to complete the sale of the Property to

3   the highest qualified bidder without further notice, hearing or order of this Court;

4        (6)    authorizing Debtor's removal of the non-load bearing demising wall between the

5   two portions of the Property being sold, and the reimbursement of the costs associated therewith

6   to the Debtor from the escrow, which reimbursement shall not exceed $10,000.00; and

7        (7)    for such other and further relief as the Court deems just and proper.

8

9   Dated: September 8, 2010             Respectfully Submitted,

10                          RINGSTAD & SANDERS, LLP

11

12               By:   _____

13                     Todd C. Ringstad

                        Nanette D. Sanders

14                     Christopher A. Minier

             General Insolvency Counsel for

15             Dynamic Builders, Inc., Debtor

             and Debtor-in-Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1              **MEMORANDUM OF POINTS AND AUTHORITIES**

2                         **I.**

3                    **STATEMENT OF FACTS**

4  **A.    Jurisdiction and Venue.**

5          On March 31, 2010, L. Ramon Bonin and Patty A. Bonin (the "Bonins"), the shareholders

6  of Dynamic Builders, Inc. (the "Debtor"), and the guarantors of the company's institutional debt,

7  commenced a voluntary Chapter 11 proceeding before this Court.  Immediately thereafter, also on

8  March 31, 2010, Debtor commenced this proceeding by the filing of a voluntary petition (the

9  "Petition Date"), filing as a related case to that commenced by the Bonins.  In the interim, Debtor

10  has continued in possession of its real property and other assets and has continued to operate its

11  businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

12  No trustee or examiner has been appointed in this case.  The Court has jurisdiction over this

13  matter pursuant to 28 U.S.C. Sections 157 and 1334.  This is a core proceeding pursuant to 28

14  U.S.C. Section 157(b)(2).  Venue over the Debtor's Chapter 11 case is proper pursuant to 28

15  U.S.C. Sections 1408 and 1409.

16  **B.    Background and General Description of the Debtor.**

17          Debtor, founded in 1964 by L. Ramon Bonin, is a general contractor, principally involved

18  in the construction of build to suit commercial/industrial buildings in the Los Angeles area.  The

19  company buys land with the intent to subdivide it into parcels or otherwise obtain necessary

20  entitlements, develops the site, and constructs commercial/industrial buildings on a contract by

21  contract basis.

22          The operations of the Debtor are overseen by Mr. Bonin, in his capacity as Chairman, and

23  his son Blaise Bonin, general manager.  Mr. Bonin's son-in-law, Ken Jackson, serves as the

24  Director of Sales.  The Bonins are the sole shareholders of the Debtor.

25          Historically, Debtor has funded the acquisition and development of specific sites through

26  (i) acquisition and construction loans from lending institutions, with such loans secured by the

27  project site and improvements; (ii) an unsecured, revolving line of credit with Comerica Bank;

28  and, (iii) in some instances, investment in specific projects by individuals in the form of

*Ringstad & Sanders*
*LLP,*
*2030 Main Street, 12th Floor*
*Irvine, California 92614*
*949.851.7450*

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1   unsecured promissory notes.   In most if not all instances, the Bonins have guaranteed the loans

2   which financed the acquisition and construction of each development project.   Additionally, each

3   secured lender has been granted an assignment of leases and rents with respect to each real

4   property securing a specific loan.   These assignments purport to give each lender the right to

5   collect any rents that accrue from the respective property following an uncured default under the

6   related loan.

7       **1.   Properties and Secured Lenders.**

8       Set forth below is a summary of the properties owned by the Debtor at the outset of this

9   case and the secured lenders (collectively, the "Secured Lenders") who financed the acquisition

10   and construction of the Debtor's existing properties, and were granted a security interest in the

11   real and personal property for the purpose of securing repayment of the loans:

| Secured Creditor | Description of Property Subject to Creditors Lien | Scheduled Value[1] | Amount of Claim[2] |
|---|---|---|---|
| Bank of America | 3020-3090 E. Washington Los Angeles, CA Commercial Building | $58,010,000 | $47,449,799 |
| Bank of America | 2914 E. Washington, Los Angeles, CA Vacant Land | $1,124,872 | $1,266,335 |
| Citizens Business Bank | 2900 Lugo St. Los Angeles, CA Vacant Land | $1,689,350 | $2,100,000 |
| Citizens National Bank | 16000 Main St Carson, CA Industrial Condos | $9,655,000 | $6,993,089 |
| Citizens Business Bank | 400 Hudson Lane San Leandro, CA Vacant Land | $12,800,000 | $6,977,225 |
| City National Bank | 1925 N. Marinanna/4671 Worth, Los Angeles, CA Vacant Land | $5,152,902 | $3,299,980 |
| City National Bank | 1000 E. Olympic Los Angeles, CA Vacant Land | $3,500,000 | $2,551,740 |

[1]   Values as reflected in the Debtor's Schedules.   The Debtor is in the process of amending the values of certain of the properties following consultation with the market and analysis of appraisal information provided by certain lenders.
[2]   Estimated principal balance as of the Petition Date.

| City National Bank | 2035 Camfield<br>Commerce, CA<br>Commercial Building | $7,000,000 | $13,446,000 |
|---|---|---|---|
| City National Bank | 1105-1107 S. Boyle – Parcel 3<br>Los Angeles, CA<br>Vacant Land | $3,675,448 | $6,051,612 |
| City National Bank | 1115-1129 S. Boyle –<br>Building 2<br>Los Angeles, CA<br>Warehouse/office building | $9,731,070 | $8,362,218 |
| City National Bank | 1133-1149 S. Boyle –<br>Building 1<br>Los Angeles, CA<br>Warehouse/Office Building | $11,733,930 | $9,889,742 |
| City National Bank | 1151 & 1155 S. Boyle<br>Los Angeles, CA<br>Warehouse/office building | $6,718,040 | $4,793,388 |
| **TOTAL** | | **$130,790,612** | **$113,181,128** |

### 2. **Comerica Bank**.

The Bonins are co-borrowers with the Debtor on an unsecured obligation to Comerica related to an Amended and Restated Business Loan Agreement dated June 4, 2007 (the "Comerica Loan Agreement"). Under the Comerica Loan Agreement, Comerica provided Debtor and the Bonins with certain credit facilities on a combined, co-borrower basis. Prior to the Petition Date, the Debtor and the Bonins defaulted on the obligations to Comerica, and, as a result thereof, in May 2009 Comerica gave the co-obligors notice that it had accelerated the obligations due and later filed a complaint in the Orange County Superior Court entitled Comerica Bank v. Dynamic Builders, Inc., et al., Case No. 30-2009-00123616. In connection with this litigation Comerica filed an application for right to attach order and writ of attachment against the Debtor and the Bonins.

### 3. **Events Leading to Bankruptcy Filing**.

Multiple factors have converged resulting in he Debtor's current cash flow difficulties, and requiring both the company and the Bonins to reorganize their financial affairs under the protection of Chapter 11. Most significantly, unprecedented events in the real estate, credit and

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1    financial markets have led to the cancellation of purchase agreements by several customers,

2    leaving the Debtor as a property owner and manager rather than seller of commercial properties.

3         Debtor and the Bonins acted swiftly to address the company's operating issues in light of

4    the foregoing circumstances by substantially reducing its workforce and actively marketing not

5    only its existing projects but also those in the planning stages.  While the Debtor and the Bonins

6    focused their efforts on finding a solution to this unprecedented situation in the company's 40

7    year very profitable history, certain creditors began taking actions that, absent the commencement

8    of the bankruptcy cases, would have had a disastrous effect on the ability of both the Debtor and

9    the Bonins to maximize the value of their assets and the enterprise as a whole.

10        With the assistance of FTI Consulting, the Debtor and the Bonins spent more than a year

11   pre-petition attempting to negotiate a complete restructure of its obligations to the Secured

12   Lenders and Comerica.  These efforts were ultimately unsuccessful.  However, as set forth below,

13   the Debtor believes it has developed a restructuring plan that will maximize the value of its real

14   estate assets, preserve on going operations and maximize the return to all creditors.

15        **4.    The Debtor's Restructuring Strategy.**

16        In this Chapter 11 case, among other things, the Debtor intends to: (1) utilize existing cash

17   on hand and future rents to continue operating its properties, while such properties are sold in the

18   ordinary course or further developed where appropriate; (2) restructure its existing debt

19   obligations and reformulate its balance sheet; (3) provide for treatment of creditor claims through

20   a Plan of Reorganization; and, (4) emerge from Chapter 11 as a viable, going concern.  By

21   undertaking these efforts, Debtor will preserve the going concern value of its business and

22   maximize the value of its real property assets for the benefit of all creditors.

23   **C.    The Proposed Sale.**

24        **1.    Description of Property.**

25        As set forth above, the Debtor is or was the owner of a commercial property located at

26   1115 – 1129, 1133 – 1149  S. Boyle Avenue, Los Angeles, CA (the "Boyle Avenue Condos").

27   The Boyle Avenue Condos consist of two industrial buildings, comprising approximately 155,771

28   square feet, that are being sold as commercial condominiums.  Since the commencement of the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1    case, the Debtor has obtained court approval for the sale of the property commonly known as

2    1151 S. Boyle.  In addition, Debtor also recently obtained Court approval for the sale of 1133,

3    1141 and 1149 South Boyle.

4        1115 – 1129 South Boyle Avenue consists of a two-story building containing a total of

5    eight commercial condominium units.  Units 1121 and 1123 (the "Property"), which are the

6    subject of the instant motion, are the middle two (of four) units on the first floor of this building.

7        This Motion seeks authorization to sell the Property.  As set forth in the Declaration of L.

8    Ramon Bonin attached hereto (the "Bonin Declaration"), the Property is encumbered by a first

9    priority deed of trust in favor of City National Bank ("CNB Deed of Trust").  The current

10   installment of real property taxes on the Property was paid in full on or about April 9, 2010.  To

11   the best of Debtor's knowledge, there are no other liens asserted against the Property.

12       **2.    Identity of the Buyers and Proposed Sale Terms.**

13       The Debtor, through its broker Lee & Associates Commerce, Inc. ("Broker"), and its

14   agents David Brandt and Jeffrey M. Rinkov (collectively the "Agents"), have negotiated a sale of

15   the Property to Kwangshik Kim and Lucy Hyeyoung Kim (the "Buyers") for $2,852,422.50.  A

16   true and correct copy of the Standard Offer, Agreement and Escrow Instructions for the Purchase

17   of the Real Estate, Addendum to Standard Offer, Agreement and Escrow Instructions for the

18   Purchase of the Real Estate, Property Information Sheet, Seller's Mandatory Disclosure

19   Statement and Disclosure for Purchase and Sale of Real Estate (hereafter collectively the "Sale

20   Agreement"), which have been executed by the Debtor and Buyers, are attached hereto as Exhibit

21   "1."  True and correct copies of the relevant portions of the Condominium Plan and Tentative

22   Tract Map pertaining to the Property are attached hereto as Exhibit "2." An escrow for the sale of

23   the Property was opened with Commerce Escrow Company on August 24, 2010.

24       The terms and conditions of the sale are set forth in the Sale Agreement.  In the event of a

25   conflict between the terms of the Sale Agreement and the terms of sale described in this Motion,

26   the Sale Agreement will be deemed to control.

27       Close of escrow is subject to recordation of a legal industrial condominium parcel map

28   (the "Map") that is expected to occur in September, 2010.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1

2          Buyers have deposited the sum of $100,000 in escrow pursuant to the Sale Agreement.

3    Upon the Buyers' waiver of their contingencies under the Sale Agreement, this initial $100,000

4    deposit shall become nonrefundable to the Buyers.  An additional nonrefundable deposit of

5    $100,000 will be due within two calendar days following the Buyers' waiver of their

6    contingencies under the Sale Agreement.  The Sale Agreement further provides that in the event

7    the Buyers do not close escrow as required by the Sale Agreement, Buyers shall forfeit their

8    $200,000 deposit as liquidate damages.

9          The Debtor represents that this is an arms-length transaction and that it has no connection

10   with Buyers other than the proposed transaction described herein.  To the best of its knowledge,

11   the Debtor believes that neither of the Buyers is related to anyone connected with the Debtor, the

12   Debtor's principals, the Debtor's counsel or the Debtor's Broker, nor are either of the Buyers

13   insiders of the Debtor.  Moreover, as is shown by the Sale Agreement, Buyers are represented by

14   their own broker in the proposed sale transaction, i.e., JM Commercial Properties, Inc., and its

15   agent Kevin Kim.  The Debtor and the Buyers understand and agree that the Sale Agreement and

16   proposed sale are subject to overbidding, and request that the Court approve the bidding

17   procedures set forth below.

18          **3.      The Debtor Proposes to Sell the Property Free and Clear of Liens, Claims and**

19   **Encumbrances.**

20          CNB holds the first deed of trust encumbering the Property.  This deed of trust is cross-

21   collateralized with deeds of trusts encumbering the Debtor's other properties which together

22   constitute the "Dynamic Spectrum" development.  By this Motion, the Debtor seeks authorization

23   to pay CNB the net proceeds of the sale of the Property, directly from escrow, so as to reduce the

24   estate's aggregate outstanding debt to CNB, which can be summarized below:

25   //

26   //

27   //

28   //

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| Description of Property Subject to CNB Lien | Scheduled Value[3] | Amount of Claim[4] |
|---|---|---|
| 1105-1107 S. Boyle – Parcel 3<br>Los Angeles, CA<br>Vacant Land | $3,675,448 | $6,051,612 |
| 1115-1129 S. Boyle – Building 2<br>Los Angeles, CA<br>Warehouse/office building | $9,731,070 | $8,362,218 |
| 1133-1149 S. Boyle – Building 1<br>Los Angeles, CA<br>Warehouse/Office Building | $11,733,930 | $9,889,742 |
| 1151 & 1155 S. Boyle<br>Los Angeles, CA<br>Warehouse/office building | $6,718,040 | $4,793,388 |
| | $31,858,488 | $29,196,960 |

The Debtor further seeks an order of Court authorizing the distribution of the proceeds of the sale of the Property through the escrow and contingent on, and payable at, the closing of escrow, as follows:

1.      Real Estate Commissions - consistent with the terms of the Debtor's engagement of the Broker and the Agents[5], payment of real estate commissions to the Debtor's Broker and the broker for the Buyers in the total combined amount of 5.5% of the gross sales price;

2.      Closing Costs - normal "closing costs," which may include things such as the Debtor's payment of the estate's share (pursuant to the terms of the Sale Agreement and local custom) of escrow charges, recording fees, documentary transfer taxes, utilities, association dues and charges, and other normal and customary charges, pro-rations, costs and fees; and

3.      Reimbursement - to the Debtor of the costs incurred in its removal of the non-load bearing demising wall between the two portions of the Property being sold, i.e., the wall between 1121 and 1123 South Boyle Avenue, which reimbursement shall not exceed $10,000.00.

---

[3]  Values as reflected in the Debtor's Schedules.
[4]  Estimated principal balance as of the Petition Date.
[5]  Pursuant to a motion filed with the Court on July 7, 2010 (Docket # 121) (the "Broker Employment Motion"), Debtor has sought authority to employ the Broker and Agents to market and sell all properties constituting the Dynamic Spectrum. A hearing was held on the Debtor's Broker Employment Motion on July 28, 2010, at which the Court ruled that it would approve the Debtor's employment of the Broker and Agent. A written Order has not yet been entered on the Broker Employment Motion.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

**D.      Payment of Real Estate Broker, Lee & Associates.**

Pre-petition the Debtor engaged Lee & Associates Commerce, Inc. (the "Broker"), and its agents David Brandt and Jeffrey M. Rinkov (the "Agents"), to market and sell the Dynamic Spectrum properties, including the Property.  Post-petition listing agreements have been negotiated and approval of the employment of Lee & Associates consistent with such agreements was granted by the Court at a hearing held on the Debtor's above-described Broker Employment Motion (Docket # 121) at the conclusion of a hearing held on July 28, 2010.

By this Motion, the Debtor seeks authorization to compensate the Broker for its services in connection with the sale of the Property, consistent with the terms of the listing agreements and the Court's approval of the Debtor's employment of the Broker and the Agents.

## II.

## PROPOSED OVERBID PROCEDURES

In order to obtain the highest and best price for the benefit of the creditors of the estate, the Debtor proposes that the sale be subject to overbid on the following terms:

A.      Only a qualified bidder may submit an overbid.  A "qualified bidder" is an individual or entity that provides a financial statement and such business and banking references as are required in the Debtor's reasonable discretion to assure the Debtor of the bidder's ability to consummate the purchase of the Property, and one who can consummate the purchase of the property on the same terms and conditions, other than price, as those proposed in the Sale Agreement.

B.      Each bid, as well as information and/or documentation establishing a bidders qualification as a "qualified bidder," must be received by the Debtor no later than 4:00 p.m., two (2) business days prior to the hearing on this Motion.

C.      The initial minimum overbid must be at least $50,000 over the amount of the proposed sale price, which results in a minimum initial overbid of $2,902,422.50.  Subsequent overbids shall be in increments as determined by the Court, but the Debtor suggests minimum increments of $25,000.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

D.      Each bid must be all cash, non-contingent, and on the same terms and conditions,

other than price, as those proposed in the current Sale Agreement between the Debtor and Buyer.

E.      Each bidder must make an earnest money deposit of at least $100,000 which must

be tendered to the Debtor by no later than 4:00 p.m. on the second business day prior to the

hearing on this Motion.  The deposit must be in the form of a cashier's check, certified check or

irrevocable letter of credit.  Each bidder must further agree to make a second deposit of an

additional $100,000 within 14 days following entry of an Order of this Court approving the sale

to such bidder.  Deposits for bidders whose bids are not accepted are to be promptly returned to

the bidders following the hearing on this Motion.

The Debtor believes that the foregoing procedures will provide for an orderly completion

of the sale of the Property by permitting all bidders to compete on similar terms, and will allow

all interested parties and the Court to compare competing bids in order to realize the greatest

possible benefit to the estate.

### III.

### THE COURT MAY AUTHORIZE THE SALE OF THE PROPERTY

### FREE AND CLEAR OF LIENS

As set forth above, the Property is subject to the CNB Deed of Trust.  By this Motion, the

Debtor requests that the Court authorize the Debtor to sell the Property free and clear of the CNB

Deed of Trust, pursuant to Bankruptcy Code section 363(f).  Section 363(f) of the Bankruptcy

Code allows a Debtor to sell property of the bankruptcy estate "free and clear of any interest in

such property of an entity," if any one of the following five conditions is met:

(1)   applicable non-bankruptcy law permits a sale of such property free and

clear of such interest;

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is to be

sold is greater than the aggregate value of all liens on such

property;

(4)   such interest is in bona fide dispute; or,

1         (5)    such entity could be compelled, in a legal or equitable proceeding,

2           to accept money satisfaction of such interest.

3       Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five

4  conditions is sufficient to sell property free and clear of liens.  *See, e.g., Citicorp Homeowners*

5  *Services, Inc. v. Elliott (In re Elliott)*, 94 B.R. 343, 345 (Bankr. W.D. Tex. 1989).

6       Applied here, the Debtor believes it has satisfied several of the five conditions outlined by

7  section 363(f).  First, as set forth in detail above, the Debtor is informed and believes that CNB

8  will consent to the sale of the property free and clear of its Deed of Trust.  Thus, the Debtor

9  believes that it has satisfied the conditions of section 363(f)(2).   Furthermore, the entire net

10  proceeds of the proposed sale will be paid to CNB to pay down its cross-collateralized liens.

11  Based upon the Debtor's review of the public records, the Debtor is not aware of any other liens,

12  claims or encumbrances asserted against the Property.   As a result, if any party were to assert an

13  interest in the Property, the Debtor would almost certainly dispute the validity of such interest,

14  thereby making it subject to a bond fide dispute, satisfying the conditions of section 363(f)(4).

15  *See also, In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill 1991) ("The bank's assertion

16  of its second mortgage security interest may ultimately prove to be voidable as a preference or a

17  fraudulent conveyance.  In this regard, the Debtor has presented a bona fide dispute under 11

18  U.S.C.. § 363(f)(4).").  In sum, the Debtor has demonstrated that approving the sale of the

19  Property free and clear of any liens, claims or encumbrances is appropriate.

20                    **IV.**

21          **BUYERS ARE PURCHASERS IN "GOOD FAITH"**

22    **IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 363(M)**

23       "When a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is

24  required to make a finding with respect to the "good faith" of the purchaser.'  *In re Abbotts*

25  *Dairies, Inc.*, 788 F.2d 143, 149-150 (3rd. Cir. 1986).   The purpose of such a finding is to

26  facilitate the operation of the Bankruptcy Code section 363(m), which provides a safe harbor for

27  purchases of a debtor's property that have acted in "good faith."

28

*Ringstad & Sanders*
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    In this case, it is clear that the Buyers is entitled to the safe harbor provided by section

2    363(m).  As set forth in the Bonin declaration, the Debtor has demonstrated that the negotiations

3    between the Buyers and the Debtor were at all times conducted at arms-length and in good faith.

4    The Buyers are represented by their own agent.  The Buyers are unrelated to the Debtor and its

5    principals and are not insiders of the Debtor.  Throughout the negotiations with the Buyers, the

6    Debtor has acted with the sole purpose of obtaining the best price for the Property.  The Property

7    has been exposed to the marketplace for a considerable period of time and the offer from the

8    Buyers is the best offer that has been received for the Property.  Based upon these facts, the Court

9    should find that Buyer is a good faith purchaser within the meaning of Section 363(m) of the

10    Bankruptcy Code.

11

**V.**

**THE COURT SHOULD AUTHORIZE THE DEBTOR**

**TO COMPENSATE LEE & ASSOCIATES AND THE AGENTS**

14    As set forth above, the Court has previously authorized the Debtor's employment of the

15    Broker and the Agents to market and sell the Property.  By this Motion, the Debtor requests that it

16    be authorized to pay the commissions earned by the Broker/Agents, consistent with the listing

17    agreements previously approved by the Court.

**VI.**

**CONCLUSION**

20    Based on the foregoing, the Debtor respectfully requests that the Court enter an Order:

21    (1)    authorizing the sale of the Property, to Buyer on the terms set forth in the Sale

22    Agreement, or to any qualified overbidder according to the terms and conditions set proposed

23    herein, free and clear of any liens, interests and encumbrances, and specifically, the CNB Deed of

24    Trust;

25    (2)    authorizing the Debtor to pay directly from escrow the valid claims of CNB,

26    brokers' commissions and costs of sale;

27    (3)    approving the overbid procedures requested herein;

28    (4)    finding that the sale of the Property was conducted in good faith within the

**Ringstad & Sanders**
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    meaning of 11 U.S.C. § 363(m), and that the Debtor and buyer of the Property are entitled to the

2    benefits and protections of this subsection of the Bankruptcy Code;

3         (5)    authorizing the Debtor to sign any and all documents necessary and to undertake

4    any non-material amendments and modifications necessary to complete the sale of the Property to

5    the highest qualified bidder without further notice, hearing or order of this Court;

6         (6)    authorizing Debtor's removal of the non-load bearing demising wall between the

7    two portions of the Property being sold, and the reimbursement of the costs associated therewith

8    to the Debtor from the escrow, which reimbursement shall not exceed $10,000.00; and

9         (7)    for such other and further relief as the Court deems just and proper.

10

11   Dated: September _8_, 2010              Respectfully Submitted,

12                                          RINGSTAD & SANDERS, LLP

13

14                                          By: _____

15                                              Todd C. Ringstad
                                                Nanette D. Sanders
16                                              Christopher A. Minier
                                            General Insolvency Counsel for
17                                          Dynamic Builders, Inc., Debtor
                                            and Debtor-in-Possession

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1

## DECLARATION OF L. RAMON BONIN

2  I, L. Ramon Bonin, declare as follows:

3  1. I have personal knowledge of the facts set forth herein and could, if called as a

4 witness, competently testify thereto.

5  2. My wife Patty A. Bonin and I are the debtors and debtors-in-possession in the

6 bankruptcy case of In re L. Ramon Bonin and Patty A. Bonin, Case No. 8:10-bk-14067 TA.  We

7 filed a petition under Chapter 11 of the Bankruptcy Code on March 31, 2010 ("Petition Date")

8 and have continued in the possession of our property and the management of our affairs.

9  3. My wife and I have been in the real estate development, construction, and sales

10 business for many years.  We directly own seventeen properties in Los Angeles, Orange,

11 Riverside and San Bernardino Counties and an additional building subject to a ground lease

12 located in San Bernardino County.

13  4. My wife and I also own 100% of the common stock of Dynamic Builders, Inc.

14 ("Debtor" and/or "Dynamic"), a general contractor, principally involved in the construction of

15 build to suit commercial/industrial building in the Los Angeles area.  The company buys land

16 with the intent to subdivide it into parcels or otherwise obtain necessary entitlements, develop the

17 site, and construct commercial/industrial buildings on a contract by contract basis.  Occasionally,

18 Dynamic builds for speculative purposes.

19  5. The operations of Dynamic are overseen by me, in my capacity as Chairman, and

20 my son Blaise Bonin, President and CEO.   Ken Jackson, who is my son-in-law, serves as the

21 Director of Sales.

22  6. Historically Dynamic has funded the acquisition and development of specific sites

23 through (i) acquisition and construction loans from lending institutions, with such loans secured

24 by the project site and improvements; (ii) an unsecured, revolving line of credit with Comerica

25 Bank ("Comerica"); and, (iii) in some instances, investment in specific projects by individuals in

26 the form of unsecured notes.   In most if not all instances, my wife and I have guaranteed the

27 loans which financed the acquisition and construction of each project.  Additionally, each secured

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  lender has been granted an assignment of leases and rents with respect to each property securing a

2  specific loan.

3      7.    As of the Petition Date, Dynamic owns the following real properties:

| Property Address | Description |
|---|---|
| 3020-3250 East Washington Blvd<br>Los Angeles, CA | Washington Food Center<br>(cold storage and food processing facility) |
| 3000 East Washington Blvd<br>Los Angeles, CA | Vacant Land |
| 1151-1155 South Boyle Avenue<br>Los Angeles, CA | Four Industrial Buildings (two single-tenant, two multi-tenant) |
| 1135 South Boyle Avenue<br>Los Angeles, CA | Boyle Vista – Building 1<br>Office and Warehouse Building (multi-tenant) |
| 1115 South Boyle Avenue<br>Los Angeles, CA | Boyle Vista – Building 2<br>Office and Warehouse Building (multi-tenant) |
| 2035 Camfield<br>Commerce, CA | Golds Gym/Mini Storage |
| 1000 East Olympic Boulevard<br>Los Angeles, CA | Vacant Land |
| 1925 North Marianna Avenue<br>4671 Worth<br>Los Angeles, CA | Vacant Land |
| 1115 South Boyle Avenue<br>Los Angeles, CA | Vacant Land |
| 400 Hudson Lane<br>San Leandro, CA | Vacant Land |
| 16000 Main Street<br>Carson, CA | Industrial Condominium Project (two units, one sold) |
| 2900 Lugo Street<br>Los Angeles, CA | Vacant Land |
| Washington Boulevard<br>Los Angeles, CA | Vacant Land<br>Site area part of Preferred 6 project (sold to iStar who is contractually obligated to deed back the excess land upon recording of a tract map) |
| 2830 East Washington Boulevard<br>Los Angeles, CA | Vacant Land |

8.    Dynamic filed its voluntary petition for relief under Chapter 11 of the Bankruptcy

Code on March 31, 2010.

9.    Since the commencement of our respective bankruptcy cases, the Debtor, as well

as my wife and I, have remained in possession of our respective property, and continue to operate

and manage our business affairs as a debtors-in-possession.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

10.    My wife and I are also co-borrowers with Debtor on the obligations to Comerica related to an Amended and Restated Business Loan Agreement dated June 4, 2007 (the "Comerica Loan Agreement"). Under the Comerica Loan Agreement, Comerica provided the Debtor, as well as my wife and I, with certain credit facilities on a combined, co-borrower basis. Prior to the Petition Date, the Debtor, my wife and I defaulted on our obligations to Comerica, and, as a result thereof, in May 2009, Comerica gave the us each notice that it had accelerated the obligations due and it later filed a complaint in the Orange County Superior Court against each of us entitled <u>Comerica Bank v. Dynamic Builders, Inc., et al.</u>, Case No. 30-2009-00123616. In connection with this litigation Comerica filed an application for right to attach order and writ of attachment against the Debtor, my wife and I.

11.    Prior to the Petition Date, the Debtor, and my wife and I, had been in discussions with the various secured lenders to conduct an orderly liquidation of certain non-productive real property holdings of Dynamic in order to make payments to the lenders and to gain time for us to continue with leasing and sales of completed projects. However, final agreements could not be reached and, in an effort maximize the value of our assets for all creditors, the Debtor, my wife and I commenced our respective Chapter 11 cases.

12.    Debtor is or was the owner of a commercial property located at 1115 – 1129, 1133 – 1149 S. Boyle Avenue, Los Angeles, CA (the "Boyle Avenue Condos"). The Boyle Avenue Condos consist of two industrial buildings, comprising approximately 155,771 square feet, that are being sold as commercial condominiums. Since the commencement of the case, the Debtor has obtained court approval for the sale of the property commonly known as 1151 S. Boyle. In addition, Debtor also recently obtained Court approval for the sale of 1133, 1141 and 1149 South Boyle.

13.    1115 – 1129 South Boyle Avenue consists of a two-story building containing a total of eight commercial condominium units. Units 1121 and 1123 (the "Property"), which are the subject of the attached motion, are the middle two (of four) units on the first floor of this building. The Property is encumbered by a first priority deed of trust in favor of City National Bank ("CNB Deed of Trust"). The current installment of real property taxes on the Property was

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1   paid in full on or about April 9, 2010.  To the best of my knowledge knowledge, there are no

2   other liens asserted against the Property.

3       14.    City National Bank ("CNB") holds the first deed of trust encumbering the

4   Property.  This deed of trust is cross collateralized with deeds of trusts encumbering the other

5   three properties which together constitute the "Dynamic Spectrum" development.  By this

6   Motion, the Debtor seeks authorization to pay CNB the net proceeds of the sale of the Property,

7   directly from escrow, so as to reduce the estate's aggregate outstanding debt to CNB, which can

8   be summarized below:

| Description of Property Subject to CNB Lien | Scheduled Value[6] | Amount of Claim[7] |
|---|---|---|
| 1105-1107 S. Boyle – Parcel 3 Los Angeles, CA Vacant Land | $3,675,448 | $6,051,612 |
| 1115-1129 S. Boyle – Building 2 Los Angeles, CA Warehouse/office building | $9,731,070 | $8,362,218 |
| 1133-1149 S. Boyle – Building 1 Los Angeles, CA Warehouse/Office Building | $11,733,930 | $9,889,742 |
| 1151 & 1155 S. Boyle Los Angeles, CA Warehouse/office building | $6,718,040 | $4,793,388 |
|  | $31,858,488 | $29,196,960 |

20      15.    Pre-petition the Debtor engaged Lee & Associates Commerce, Inc. (the

21  "Broker"), and its agents David Brandt and Jeffrey M. Rinkov (the "Agents"), to market and sell

22  the Dynamic Spectrum properties, including the Property.  Post-petition listing agreements have

23  been negotiated and approval of the employment of Lee & Associates consistent with such

24  agreements was requested in the Debtor's "Motion for Order (1) Approving First Amendment to

25  Lease and Option to Purchase with TAMSC, Inc.; (2) Authorizing the Debtor to Assume the

26  Lease and Option, as Modified; and (3)(A) Approving Sale of Commercial Property Free and

27  Clear of Liens, Claims and Encumbrances Pursuant to Bankruptcy Code Sections 363(B),

---

[6]  Values as reflected in the Debtor's Schedules.
[7]  Estimated principal balance as of the Petition Date.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California  92614
949.851.7450

1  363(F), and 363(M); (B) Authorizing Debtor to Pay Secured Claim from Net Sale Proceeds; and

2  (C) Authorizing the Employment of Broker, Lee & Associates – Commerce, Inc., and Agents

3  David Brandt and Jeffrey Rinkov" (the "Broker Employment Motion"), which was filed with the

4  Court on July 7, 2010 (Docket # 121). A hearing was held on the Debtor's Broker Employment

5  Motion on July 28, 2010, at which the Court ruled that it would approve the Debtor's

6  employment of the Broker and Agent. A written Order has not yet been entered on the Broker

7  Employment Motion.

8      16.    By way of the attached Motion, the Debtor seeks authorization to compensate the

9  Broker and Agents for their services in connection with the sale of the Property, consistent with

10  the terms of the listing agreements and the Court's approval of the Debtor's employment of the

11  Broker and the Agents.

12      17.    The Debtor, through its Broker and Agents, have negotiated a sale of the Property

13  to Kwangshik Kim and Lucy Hyeyoung Kim (the "Buyers") for $2,852,422.50. A true and

14  correct copy of the Standard Offer, Agreement and Escrow Instructions for the Purchase of the

15  Real Estate, Addendum to Standard Offer, Agreement and Escrow Instructions for the Purchase

16  of the Real Estate, Property Information Sheet, Seller's Mandatory Disclosure Statement and

17  Disclosure for Purchase and Sale of Real Estate (hereafter collectively the "Sale Agreement"),

18  which have been executed by the Debtor and Buyers, are attached hereto as Exhibit "1." True

19  and correct copies of the relevant portions of the Condominium Plan and Tentative Tract Map

20  pertaining to the Property are attached hereto as Exhibit "2." An escrow for the sale of the

21  Property was opened with Commerce Escrow Company on August 24, 2010.

22      18.    The terms and conditions of the sale are set forth in the Sale Agreement. In the

23  event of a conflict between the terms of the Sale Agreement and the terms of sale described in

24  this Motion, the Sale Agreement will be deemed to control.

25      19.    Close of escrow is subject to recordation of a legal industrial condominium parcel

26  map (the "Map") that is expected to occur in September, 2010.

27      20.    Buyers have deposited $100,000 in escrow pursuant to the Sale Agreement. Upon

28  the Buyers' waiver of their contingencies under the Sale Agreement, this initial $100,000 deposit

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    shall become nonrefundable to the Buyers. An additional nonrefundable deposit of $100,000 will

2    be due within two calendar days following the Buyers' waiver of their contingencies. The Sale

3    Agreement further provides that in the event the Buyers do not close escrow as required by the

4    Sale Agreement, Buyers shall forfeit their $200,000 deposit as liquidate damages.

5        21.    The Debtor represents that this is an arms-length transaction and that it has no

6    connection with Buyers other than the proposed transaction described herein. To the best of its

7    knowledge, the Debtor believes that neither of the Buyers is related to anyone connected with the

8    Debtor, the Debtor's principals, the Debtor's counsel or the Debtor's Broker, nor are either of the

9    Buyers insiders of the Debtor. Moreover, as is shown by the Sale Agreement, Buyers are

10    represented by their own broker in the proposed sale transaction, i.e., JM Commercial Properties,

11    Inc., and its agent Kevin Kim. The Debtor and the Buyers understand and agree that the Sale

12    Agreement and proposed sale are subject to overbidding, and request that the Court approve the

13    bidding procedures set forth below.

14        22.    I believe that Buyers' offer to purchase the Property for $2,852,422.50 is fair and

15    reasonable. The Buyers' offer to purchase the Property for $2,852,422.50 is the highest and best

16    offer that we have received.

17        25.    To the best of my knowledge, the proposed transaction with Buyers is an arms-

18    length transaction and the Debtor has no connection with Buyers other than the proposed

19    transaction described herein. To the best of my knowledge, I believe that neither of the Buyers

20    are related to anyone connected with the Debtor, the Debtor's principals, the Debtor's counsel or

21    the Debtor's Broker or Agents, nor are the Buyers insiders of the Debtor. Moreover, as is shown

22    by the Sale Agreement, the Buyers are represented by their own broker in the proposed sale

23    transaction, i.e., JM Commercial Properties, Inc., and its agent Kevin Kim.

24        I declare under penalty of perjury under the laws of the United States of America that the

25    foregoing is true and correct. Executed on September _8_, 2010, at _Los Angeles_,

26    California.

27

28                                              J. Ramon Bonin

**AIR**
COMMERCIAL
REAL ESTATE
ASSOCIATION

## STANDARD OFFER, AGREEMENT AND ESCROW
## INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
### *(Non-Residential)*
### AIR Commercial Real Estate Association

<u>August 19, 2010</u>
(Date for Reference Purposes)

1. **Buyer.**

    1.1 <u>Kwangshik Kim and Lucy Hyeyoung Kim</u>                                                   , ("Buyer")
hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"),
through an escrow ("Escrow") to close ~~30 or~~     <u>see Paragraph 35</u>     ~~days after the waiver or expiration of the Buyer's Contingencies,~~
("Expected Closing Date") to be held by <u>Commerce Escrow Company c/o Raul Zuniga</u>                                     ("Escrow Holder")
whose address is <u>1545 Wilshire Boulevard, Suite 600, Los Angeles, California 90017</u>
                          , Phone No.   <u>(213) 484-0855</u>  , Facsimile No.   <u>(213) 484-0417</u>
upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such
assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

    1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this
document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to
purchase, the Property upon terms accepted by both Parties.

2. **Property.**

    2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description)  <u>approximately</u>
<u>20,017 square feet of a larger industrial condominium building on a larger parcel of land</u>

is located in the City of <u>Los Angeles</u>                      , County of <u>Los Angeles</u>
State of <u>California</u>              , is commonly known by the street address of <u>1121 and 1123 South Boyle</u>
<u>Avenue</u>
and is legally described as:  <u>to be provided in Escrow</u>

(APN:                           ).

    2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be
completed or corrected to meet the requirements of <u>Land America Lawyers Title Company</u>               ("Title Company"),
which shall issue the title policy hereinafter described.

    2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to
applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical
distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections
only); space heaters; heating, ventilating, air conditioning equipment ("HVAC"); air lines; fire sprinkler systems; security and fire detection systems;
carpets; window coverings; wall coverings; and _____

_____

_____ (collectively, the "Improvements").

    2.4 The fire sprinkler monitor:☑ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a
new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.

    2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and
_____ all of which shall be removed by Seller prior to Closing.

3. **Purchase Price.**

    3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be $<u>2,852,422.50</u> , payable as follows:

| | | |
|---|---|---|
| | (a)  Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price): | $TBD |
| *(Strike if not applicable)* | (b)  Amount of "New Loan" as defined in paragraph 5.1, if any: | $TBD |
| | ~~(c)  Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):~~ | |
| | ~~(i)  An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately:~~ | ~~$~~ |
| *(Strike if not applicable)* | ~~Said First Note is payable at $_____ per month, including interest at the rate of _____% per annum until paid (and/or the entire unpaid balance is due on _____);~~ | |
| | ~~(ii)  An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately:~~ | ~~$~~ |
| | ~~Said Second Note is payable at $_____ per month, including interest at the rate of _____% per annum until paid (and/or the entire unpaid balance is due on _____);~~ | |
| *(Strike if not applicable)* | ~~(d)  Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~ | ~~$~~ |
| | **Total Purchase Price:** | $2,852,422.50 |

    ~~3.2  If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.~~

INITIALS

**PAGE 1 OF 8**

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

**FORM OFA-7-6/07E**

Exhibit 1
Page 23

4. **Deposits.** *(see Paragraph 28)*

4.1 ☐ Buyer has delivered to Broker a check in the sum of $_____, payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☐ within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder. Buyer shall deliver to Escrow Holder a check in the sum of $_____. If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder, whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2 Additional Deposit.

(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of $_____ to be applied to the Purchase Price at the Closing.

(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (k) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of $_____ to be applied to the Purchase Price at the Closing.

4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "Deposit"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____. NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

5. **Financing Contingency.** *(Strike if not applicable)*

5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least _____% of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2 Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within _____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived the New Loan contingency.

5.3 If, after due diligence, Buyer shall notify the Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

6. **Seller Financing.** *(Purchase Money Note), (Strike if not applicable)*

6.1 If Seller approves Buyer's financials *(see paragraph 6.6)* the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____% per annum, with principal and interest paid as follows:

_____

_____

_____

The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.

6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following *(see also paragraph 12.2 (b)):*

(a) Prepayment. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.

(b) Late Charge. A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.

(c) Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.

6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.

6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.

6.5 Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.

7. **Real Estate Brokers.**

7.1 The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☑ **Lee & Associates®-Commerce, Inc. (J. Rinkov/D. Brandt)** represents Seller exclusively ("Seller's Broker");

☑ **JM Commercial Properties, Inc. (K. Kim)** _____ represents Buyer exclusively ("Buyer's Broker"); or

☐ _____ represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that Brokers are the procuring cause of this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

8. **Escrow and Closing.**

8.1 Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include the standard general escrow provisions.

8.2 As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3 Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

**PAGE 2 OF 8**

INITIALS _____            INITIALS _____

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION            FORM OFA-7-5/07E

Exhibit ____
Page 24

8.4  Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

8.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7  If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall be promptly refunded all funds deposited by Buyer with Escrow Holder, less only Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8  The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9  Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10  If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

9.  Contingencies to Closing. (see Addendum)

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT. Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (i) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a) Disclosure. Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association ("AIR") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or ___ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b) Physical Inspection. Buyer has 10 or __45__ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c) Hazardous Substance Conditions Report. Buyer has 30 or __45__ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "Hazardous Substance" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) Soil Inspection. Buyer has 30 or __45__ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e) Governmental Approvals. Buyer has 30 or __45__ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) Conditions of Title. Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or ___ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) Survey. Buyer has 30 or __45__ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) Existing Leases and Tenancy Statements. Seller shall within 10 or ___ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) Owner's Association. Buyer shall within 10 or __45__ days of the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j) Other Agreements. Seller shall within 10 or __45__ days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k) Financing. If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l) Existing Notes. If paragraph 3.1(c) has not been stricken, Seller shall within 10 or __45__ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 30 or __45__ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof.

PAGE 3 OF 8

INITIALS _____    INITIALS _____

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION    FORM OFA-7-6/07E

Exhibit ___1___
Page ___25___

~~(m) Personal Property. In the event that any personal property is included in the Purchase Price, Buyer has 10 or ————days from the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 ————days of the Date of Agreement.~~

(n) *Destruction, Damage or Loss.* There shall not have occurred prior to the Closing, a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o) *Material Change.* Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. "Material Change" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

~~(q) Brokerage Fee. Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("Brokerage Fee"). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.~~

9.2 All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3 If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("Disapproved Item"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("Seller's Election"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4 Buyer understands and agrees that until such time as all Buyer's Contingencies have been satisfied or waived, Seller and/or its agents may solicit, entertain and/or accept back-up offers to purchase the Property.

9.5 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

10. **Documents Required at or Before Closing:**

10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2 Seller shall deliver in time for delivery to Buyer at the Closing:

  (a) Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

  (b) If applicable, the Beneficiary Statements concerning Existing Note(s).

  (c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's interest in Lease form published by the AIR or its equivalent.

  (d) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

  (e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

  (f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

  (g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

  (h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3 Buyer shall deliver to Seller through Escrow:

  (a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date.

  (b) If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgagee loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

  (c) The Assignment and Assumption of Lessor's interest in Lease specified in paragraph 10.2(c) above, duly executed by Buyer.

  (d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

  (e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

  (f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.
IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

11. **Prorations and Adjustments.**

11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* WARNING: Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

PAGE 4 OF 8

INITIALS

INITIALS

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any Item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6 *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7 *Variations In New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

## 12. Representations and Warranties of Seller and Disclaimers.

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and, are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a) *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(m) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c) *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d) *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) *Changes In Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(n)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party herein.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

## 13. Possession.

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

## 14. Buyer's Entry.

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

## 15. Further Documents and Assurances.

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

## 16. Attorneys' Fees.

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

## 17. Prior Agreements/Amendments.

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

## 18.  Broker's Rights.

18.1  If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.

18.2  Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

## 19. Notices.

19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission.

19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. Communications transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is

INITIALS                                                                                          INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

Exhibit  1
Page  27

sufficient), provided a copy is also delivered via delivery or mail. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

19.3 Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20.  Duration of Offer.**

20.1  If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of __Los Angeles__ on the date of __August 24, 2010__ , it shall be deemed automatically revoked.

20.2 .The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21.  LIQUIDATED DAMAGES.  (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _____$200,000.00_____ , UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.



Buyer Initials                    Seller Initials

**22.  ARBITRATION OF DISPUTES.  (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)**

22.1  ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. THE ARBITRATORS SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING, PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 18 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2  BUYERS RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3  NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.



Buyer Initials                    Seller Initials

**23.  Miscellaneous.**

23.1  Binding Effect. This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2  Applicable Law. This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.

23.3  Time of Essence. Time is of the essence of this Agreement.

23.4  Counterparts. This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5  Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6  Conflict. Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

23.7  1031 Exchange. Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange.

23.8 Days. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

~~24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.~~
~~24.1  The Parties and Brokers agree that their relationship(s) shall be governed by the applicable sections of the California Civil Code, as summarized in paragraph 24.2.~~
~~24.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:~~


INITIALS

PAGE 6 OF 8


INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM OFA-7-5/07E

Exhibit __1__
Page __28__

*(a) Seller's Agent. A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.*

*(b) Buyer's Agent. A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.*

*(c) Agent Representing Both Seller and Buyer. A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer. a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.*

*(d) Further Disclosures. Throughout this transaction Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.*

*24.3. Confidential Information. Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.*

25.  Construction of Agreement. In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

26  Additional Provisions:

Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum consisting of paragraphs _____ 28 _____ through _____ 40 _____ . (If there are no additional provisions write "NONE.")

Attached hereto and made a part of this Agreement are the following documents: (a) Addendum to Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate, (b) Property Information Sheet, (c) Seller's Mandatory Disclosure Statement, and (d) Disclosure for Purchase and Sale Agreement.

---

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.

2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

---

NOTE:

1.    THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2.    IF THE BUYER IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

INITIALS

PAGE 7 OF 8

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

Exhibit 1
Page 29

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

| BROKER: | BUYER: |
|---|---|
| JM COMMERCIAL PROPERTIES, INC. | KWANGSHIK KIM AND LUCY HYEYOUNG KIM |

| | |
|---|---|
| Attn: Kevin Kim | By: _____ |
| Title: _____ | Date: _____ |
| Address: 2203 West 190th Street, 1st Floor | Name Printed: _____ |
| Torrance, California 90504 | Title: _____ |
| Telephone:(310) 767-5600 | Telephone:(213) 748-8484 |
| Facsimile:(310) 767-5601 | Facsimile:(213) 748-8487 |
| Email: kevinkim@cbcjm.com | |
| Federal ID No. _____ | By: _____ |
| Broker/Agent DRE License #: _____ | Date: _____ |
| | Name Printed: _____ |
| | Title: _____ |
| | Address: 1100 South San Pedro Street, Ste N-6 |
| | Los Angeles, California 90015 |
| | Telephone:(  ) _____ |
| | Facsimile:(  ) _____ |
| | Email: _____ |
| | Federal ID No. _____ |

**27. Acceptance.**

27.1   Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2   Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum per a separate agreement equal to _____% of the Purchase Price to be divided equally between Seller's Broker and Buyer's Broker. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3   Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

| BROKER: | SELLER: |
|---|---|
| LEE & ASSOCIATES®-COMMERCE, INC. | DYNAMIC BUILDERS, INC. |

| | |
|---|---|
| Attn: David Brandt/Jeffrey Rinkov | By: L. Ramon Bonin |
| Title: Senior Vice President/President | Date: AUG. 24, 2010 |
| Address: 500 Citadel Drive, Suite 140 | Name Printed: L. Ramon Bonin |
| Commerce, California 90040 | Title: Chairman |
| Telephone:(323) 767-2104/767-2101 | Telephone:(213) 746-6630 |
| Facsimile:(323) 767-2064/767-2061 | Facsimile:(213) 748-8017 |
| Email: jrinkov@lee-associates.com | |
| Federal ID No.: 95-4295544 | By: _____ |
| Broker/Agent DRE License #: 00999100/01238887 | Date: _____ |
| | Name Printed: _____ |
| | Title: _____ |
| | Address: 2114 South Hill Street |
| | Los Angeles, California 90007 |
| | Telephone:(  ) _____ |
| | Facsimile:(  ) _____ |
| | Email: dmartinez@dynamicbuilders.com |
| | Federal ID No.: 95-2851491 |

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association,  800 W 6th Street, Suite 800, Los Angeles, CA 90017.
Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

G: WinAIr\Forms\Jeff.R\Standard Offer 2010\Kim-1121 Boyle 8-19-10Y
© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

**INITIALS**

**PAGE 8 OF 8**

**INITIALS**

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

**FORM OFA-7-6/07E**

Exhibit 1
Page 30

ADDENDUM TO STANDARD OFFER, AGREEMENT AND ESCROW
INSTRUCTIONS FOR PURCHASE OF REAL ESTATE

Buyer:      Kwangshik Kim and Lucy Hyeyoung Kim
Seller:     Dynamic Builders, Inc.
Premises:   1121 and 1123 South Boyle Avenue, Los Angeles, California
Dated:      August 19, 2010

In the event of a conflict between the terms of the preprinted form and this Addendum, the terms of this Addendum shall prevail.

28. **Deposit Schedule:**    All deposits may be made by affiliated entities to Buyer and/or potential Nominees to this transaction. All deposits shall be paid through Escrow and shall apply to the Purchase Price at Closing. Deposits shall be made as follows:

Upon execution of this Agreement (to be released to Seller and nonrefundable upon waiver of Buyer's contingencies):                                                      $100,000.00

Within two (2) days following waiver of Buyer's contingencies (said deposit shall remain in Escrow on a nonrefundable basis):                                            $100,000.00

Buyer is aware and understands that upon the release of the funds as provided, this Escrow will not have been completed and that no documents will have been filed of record in connection herewith. This instruction and order for disbursement to Seller prior to the close of this Escrow is given with the full knowledge of the condition of the Escrow and title to the Property, which is the subject of this Escrow at the time said funds are released. Payment of this money of Buyer's deposit is without liability or recourse on the Escrow or Escrow Holder. Buyer is also aware Seller is a debtor in possession under a Chapter 11 filing and this transaction.

No further deposits will be required until the close of Escrow, at which time the balance of the Purchase Price is due and payable, subject to lender and court approval.

29. **Buyer's Right to Cancel Escrow:**    Notwithstanding anything contained herein to the contrary, Buyer shall have the right to cancel Escrow after one hundred and eighty (180) days from the opening of Escrow in the event Seller is unable to complete and deliver to Buyer a recorded condominium parcel map for the Premises within said 180-day period.

30. **Document Delivery:**    Concurrent with the opening of Escrow, Seller shall provide Buyer with copies of Seller's soils report, environmental assessment, and survey. Buyer is advised that these reports are the property of Seller and are provided as reference only. Buyer's reliance on these reports is entirely at Buyer's election.

31. **Liquidated Damages:**    IN ADDITION TO LIQUIDATED DAMAGES AS CALLED FOR IN PARAGRAPH 21 OF THE PREPRINTED FORM, IN THE EVENT OF A DEFAULT BY BUYER, ESCROW HOLDER IS ALSO INSTRUCTED TO IMMEDIATELY CANCEL THIS ESCROW WITHOUT FURTHER SIGNATURE REQUIRED OF BUYER.

BUYER'S INITIALS                                SELLER'S INITIALS

32. **Construction:**    Seller represents and warrants the construction of the building is in accordance with building codes of the City of Los Angeles and will provide Buyer a copy of the Certificate of Occupancy. Seller shall make sure all fixtures and building functions are in good working order upon the close of Escrow. Upon the close of Escrow, the building will be in "as is" condition.

INITIALS                    Page 1 of 2                    INITIALS

G:\Jeff R\2010 Documents\Addendum\Boyle-Kim 1121 Boyle 8-19-10V.docx

Exhibit 1
Page 31

ADDENDUM TO STANDARD OFFER, AGREEMENT AND ESCROW
INSTRUCTIONS FOR PURCHASE OF REAL ESTATE

Buyer:      Kwangshik Kim and Lucy Hyeyoung Kim
Seller:     Dynamic Builders, Inc.
Premises:   1121 and 1123 South Boyle Avenue, Los Angeles, California
Dated:      August 19, 2010

33.   **Property Subdivision:**   Seller is in the process of completing and recording a legal industrial condominium parcel map for the Property. The definition of the Property is 1121 and 1123 South Boyle Avenue, including the underlying real property, common area, and related rights. A separate site association consisting of all other owners of the entire business park shall be responsible for the maintenance of landscaping, common drive aisles, and site fire pump station. An estimate of $0.05 per month per square foot of building area for the site association's costs shall be assessed to each property owner, subject to modification after one (1) full year of occupancy by the owners.

34.   **Site Association Matters:**   Buyer understands that it will be taking title to the subject Property, subject to ingress and egress and vehicle and truck maneuvering easements, as well as subject to Covenants, Conditions and Restrictions (CC&Rs) that will govern its occupancy within the master planned site. As such, there will be costs and expenses that Buyer will be required to pay for common area upkeep and maintenance as part of the site's related monthly association dues. An association consisting of the owners of 1121 and 1123 South Boyle Avenue shall be responsible for the common areas of the 1115-1129 and 1133-1149 units of the industrial condominium.

35.   **Opening of Escrow:**   Escrow shall be deemed open the date Escrow Holder is in receipt of this purchase and sale agreement and Escrow Instructions executed by both Buyer and Seller.

36.   **Close of Escrow:**   Close of Escrow shall occur sixty (60) days from the opening of Escrow, subject to the recordation of the condominium parcel map.

37.   **Property Taxes:**   Escrow shall handle all property tax prorations at the close of Escrow. Seller shall be responsible for any and all property taxes due for the period preceding the close of Escrow, and Buyer shall be responsible for all property taxes due from and after the close of Escrow. Any property taxes which may be assessed or due in the future or have not been received at the time of the close of Escrow will be the responsibility of Buyer.

38.   **Arbitration:**   In the event of any dispute, claim, question or disagreement rising out of or relating to this Agreement or the breach thereof, the parties shall use their best effort to settle such disputes, claims, questions or disagreement between the parties within seven (7) calendar days of the party's written notification to the other of such outstanding dispute. In the event that a resolution is not forthcoming within said seven (7) calendar days, the remaining disputes, claims, questions or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Construction Industry Rules. Both parties agree to commence arbitration within sixty (60) days from the end of the aforementioned 7-calendar day period. In the event arbitration is required, the prevailing party in the arbitration shall be entitled to recover all of its costs and expenses, including mediation expenses, arbitration costs, expert witness fees, and reasonable attorneys' fees and costs.

39.   **Marketing:**   Buyer authorizes Seller to use photographs, renderings or other representations of the building for future marketing purposes.

40.   **Demising Wall:**   Upon the waiver of Buyer's contingencies and the release of its $100,000.00 deposit to Seller, Seller shall remove the nonbearing portion of the demising wall between Units 1121 and 1123. Said removal will be completed prior to the close of Escrow at Seller's sole cost and direction.

INITIALS                  Page 2 of 2                  INITIALS

G:\Staff\R26053 Documents\Addendum\Kwa-Kim 1121 Boyle 8-19-10V.docx



Exhibit 1
Page 32



## PROPERTY INFORMATION SHEET
### (Non-Residential)
### AIR Commercial Real Estate Association

**PREFACE:**

**Purpose:** This Statement is NOT a warranty as to the actual condition of the Property/Premises. The purpose is, instead, to provide the brokers and the potential buyer/lessee with important information about the Property/Premises which is currently in the actual knowledge of the Owner and which the Owner is required by law to disclose.

**Actual Knowledge:** For purposes of this Statement the phrase 'actual knowledge' means: the awareness of a fact, or the awareness of sufficient information and circumstances so as to cause one to believe that a certain situation or condition probably exists.

**TO WHOM IT MAY CONCERN:**

Dynamic Builders, Inc. _____ ("Owner"),
owns the Property/Premises commonly known by the street address of  1121 and 1123 South Boyle Avenue
located in the City of  Los Angeles _____ County of,  Los Angeles _____
State of  California _____ , and generally described as (describe briefly the nature of the Premises or Property)
approximately 20,017 square feet of a larger industrial condominium building on a larger
parcel of land

_____ (herein after "Property"), and certifies that:

**1. Material Physical Defects.** Owner has no actual knowledge of any material physical defects in the Property or any improvements and structures thereon, including, but not limited to the roof, except (if there are no exceptions write "NONE"):  "None"

**2. Equipment.**
A. Owner has no actual knowledge that the heating, ventilating, air conditioning, plumbing, loading doors, electrical and lighting systems, life safety systems, security systems and mechanical equipment existing on the Property as of the date hereof, if any, are not in good operating order and condition, except (if there are no exceptions write "NONE"):  "None"

B. Owner has no actual knowledge of any leases, financing agreements, liens or other agreements affecting any equipment which is being included with the Property, except (if there are no exceptions write "NONE"):  "None"

**3. Soil Conditions.** Owner has no actual knowledge that the Property has any slipping, sliding, settling, flooding, ponding or any other grading, drainage or soil problems, except (if there are no exceptions write "NONE"):  "None"

**4. Utilities.** Owner represents and warrants that the Property is served by the following utilities (check the appropriate boxes) ☑ public sewer system and the cost of installation thereof has been fully paid, ☐ private septic system, ☑ electricity, ☐ natural gas, ☑ domestic water, ☑ telephone, and ☐ other: _____

**5. Insurance.** Owner has no actual knowledge of any insurance claims filed regarding the Property during the preceeding 3 years, except (if there are no exceptions write "NONE"):  "None"

**6. Compliance With Laws.** Owner has no actual knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes, or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable government agency or of any casualty insurance company that any work of investigation, remediation, repair, maintenance or improvement is to be performed on the Property, except (if there are no exceptions write "NONE"):  "None"

**7. Hazardous Substances and Mold.**
A. Owner has no actual knowledge of the Property ever having been used as a waste dump, of the past or present existence of any above or below ground storage tanks on the Property, or of the current existence on the Property of asbestos, transformers containing PCB's or any hazardous, toxic or infectious substance whose nature and/or quantity of existence, use, manufacture or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare, except (if there are no exceptions write "NONE"):  "None"

B. Owner represents and warrants that it is not currently, and never has been engaged in the business of hauling waste, and never stored hazardous substances on the Property, except (if there are no exceptions write "NONE"):  "None"

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM PI-S-6/07E



Exhibit )
Page 33

C. Owner has no actual knowledge of the existence on the Property of hazardous levels of any mold or fungi defined as toxic under applicable state or Federal law, except (if there are no exceptions write "NONE"):  "None"

8. **Fire Damage.** Owner has no actual knowledge of any structure on the Property having suffered material fire damage, except (if there are no exceptions write "NONE"):  "None"

9. **Actions, Suits or Proceedings.** Owner has no actual knowledge that any actions, suits or proceedings are pending or threatened before any court, arbitration tribunal, governmental department, commission, board, bureau, agency or instrumentality that would affect the Property or the right or ability of an owner or tenant to convey, occupy or utilize the Property, except (if there are no exceptions write "NONE"):  Except those previously disclosed lender and Chapter 11 approvals required

10. **Governmental Proceedings.** Owner has no actual knowledge of any existing or contemplated condemnation, environmental, zoning, redevelopment agency plan or other land use regulation proceedings which could detrimentally affect the value, use and operation of the Property, except (if there are no exceptions write "NONE"):  Pending recordation on the condominium map

11. **Unrecorded Title Matters.** Owner has no actual knowledge of any encumbrances, covenants, conditions, restrictions, easements, licenses, liens, charges or other matters which affect the title of the Property that are not recorded in the official records of the county recorder where the Property is located, except (if there are no exceptions write "NONE"):  Except as may be required by recordation of the condominium map, along with the Conditions, Covenants and Restrictions (CC&R) and the Association Grant Deed

12. **Leases.** Owner has no actual knowledge of any leases, subleases or other tenancy agreements affecting the Property, except (if there are no exceptions write "NONE"):  "None"

13. **Options.** Owner has no actual knowledge of any options to purchase, rights of first refusal, rights of first offer or other similar agreements affecting the Property, except (if there are no exceptions write "NONE"):  "None"

14. **Other.** (It will be presumed that there are no additional items which warrant disclosure unless they are set forth herein): _____

The statements herein will be relied upon by brokers, buyers, lessees, lenders and others. Therefore, Owner and/or the Owner's Property Manager has reviewed and modified this printed statement as necessary to accurately and completely state all the known material facts concerning the Property. To the extent such modifications are not made, this statement may be relied upon as printed. This statement, however, shall not relieve a buyer or lessee of responsibility for independent investigation of the Property. Owner agrees to promptly notify, in writing, all appropriate parties of any material changes which may occur in the statements contained herein from the date this statement is signed until title to the Property is transferred, or the lease is executed.

Date: AUG. 24, 2010
(Fill in date of execution)

OWNER HAS READ ALL THE ABOVE STATEMENTS.
"OWNER"

DYNAMIC BUILDERS, INC.

By: _____
Name Printed:  L. Ramon Bonin
Title:  Chairman

Buyer/lessee hereby acknowledges receipt of a copy of this Property Information Sheet on _____

"BUYER"
KWANGSHIK KIM AND LUCY HYEYOUNG KIM

By: _____
Name Printed: _____
Title: _____

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017. Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.
G:\WinAir\Forms\Jeff R\Property Information 2010\1121 & 1125 Boyle-Kim 8-19-10V

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM PI-5-6/10E

Exhibit 1
Page 34



## SELLER'S MANDATORY DISCLOSURE STATEMENT

*(Required by law on transactions*
*involving non-residential properties in California)*
**DO NOT USE THIS FORM WITH REGARD**
**TO THE SALE OF RESIDENTIAL PROPERTIES**
AIR Commercial Real Estate Association

This disclosure statement is intended to be a part of the ☑ STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS FOR PURCHASE OF REAL ESTATE (See paragraph 9.1(a) of said document) or ☐ _____
_____ (the "Purchase Agreement")
dated __August 19, 2010__, regarding that certain real property commonly known
as: __1121 and 1123 South Boyle Avenue, Los Angeles, California__ (the "Property")
wherein __Dynamic Builders, Inc.__ is the Seller
and __Kwangshik Kim and Lucy Hyeyoung Kim__ is the Buyer.
Note: This disclosure statement is __not__ designed nor intended to be used in place of the standard Property Information Sheet published by the AIR Commercial Real Estate Association ("AIR"). Both documents should be used in every transaction involving a sale.

In order to comply with State law concerning disclosures to a potential purchaser, Seller elects shall pay for, through Escrow, and Escrow Holder shall order and deliver to Buyer, Seller, and Broker:

☐ A.   Utilize a report prepared by a professional consultant which has been approved by the AIR, i.e. First American Natural Hazard Disclosures, (800) 527-0027, or JCP Property Disclosure Reports, (800) 748-5233. A copy of their report is attached hereto. (Complete paragraph 8, 9, and 10 and sign this statement in the place provided.)

☐ B.   Utilize a report prepared by _____
(   )_____. A copy of their report is attached hereto. (Complete paragraphs 8, 9 and 10, sign this Statement in the place provided, and attach a copy of The Commercial Property Owner's Guide to Earthquake Safety.)

☐ C.   Complete this Disclosure Statement without the assistance of a professional consultant. (Complete paragraphs 1 through 12 and sign this Statement in the place provided. Remember to attach a copy of The Commercial Property Owner's Guide to Earthquake Safety.)

1.   EARTHQUAKE FAULT ZONES.   If the Property is located within a delineated Earthquake Fault Zone (a zone that encompasses a potentially or recently active trace of an earthquake fault that is deemed by the State Geologist to constitute a potential hazard to structures from surface faulting or fault creep), California Public Resources Code §2621 et seq. mandates that prospective purchasers be advised that the Property is located within such a Zone, and that its development may require a geologic report from a state registered geologist. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a delineated Earthquake Fault Zone.

2.   SEISMIC-HAZARD ZONES.   If the Property is located within a Seismic Hazard Zone as delineated on a map prepared by the California Division of Mines and Geology, California Public Resources Code §2690 et seq. mandates that prospective purchasers be advised that the Property is located within such Zone. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a Seismic Hazard Zone.

3.   EARTHQUAKE SAFETY.   If (1) the improvements on the Property were constructed prior to 1975, and (2) said improvements include structures with (i) pre-cast (e.g., tilt-up) concrete or reinforced masonry walls together with wood frame floors or roofs or (ii) unreinforced masonry walls, Buyer must be provided with a copy of The Commercial Property Owner's Guide to Earthquake Safety (the "Booklet") published by the California Seismic Safety Commission. Buyer is hereby informed that the Property:

☐ (a) meets the foregoing requirements, and a copy of the Booklet and a completed "Commercial Property Earthquake Weakness Disclosure Report" is attached hereto shall be delivered to Seller and Buyer through Escrow by Escrow Holder. Within five business days of Buyer's receipt of said Disclosure Report, Buyer shall deliver a duly countersigned copy of the same to Escrow Holder, with a copy to Seller and Seller's Broker. Escrow Holder is hereby instructed that the Escrow shall not close unless and until Escrow Holder has received the Disclosure Report duly signed by both Seller and Buyer.

☐ (b) does not meet the foregoing requirements requiring the delivery of the Booklet.

4.   FIRE PROTECTION.   If the Property is located within a designated State Responsibility Area as delineated on a map prepared by the California Department of Forestry, California Public Resources Code §4125 mandates that prospective purchasers be advised that the Property is located within a wildland area which may contain substantial forest fire risks and hazards, that the State may not be responsible to provide fire protection services, and that the Property may be subject to the requirements of Public Resources Code §4291 which requires the periodic removal of brush, the maintenance of firebreaks, and other similar activities. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a designated State Responsibility Area.

5.   FIRE HAZARD.   If the Property is located within an area designated as a Very High Fire Hazard Severity Zone pursuant to Government Code §51178 et seq, §51183.5 mandates that prospective purchasers be advised that the Property is located within such a zone and that the Property may be subject to various maintenance, design and/or construction requirements and/or restrictions. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a designated Very High Fire Hazard Severity Zone.

6.   AREA OF POTENTIAL FLOODING.   If the Property is located within an area of potential flooding in the event of the failure of a dam as shown on an inundation map designated pursuant to Government Code §8589.5, §8589.4 mandates that prospective purchasers be advised that the Property is located within such an area. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a designated area of potential flooding.

7.   FLOOD HAZARD AREAS.   If the Property is located within a designated Federal Flood Hazard Area as delineated on a map prepared by the Federal Emergency Management Agency, Federal law, ie. 42 U.S.C. §4104a, mandates that prospective purchasers be advised that the Property is located within an area having special flood hazards and that flood insurance may be required as a condition to obtaining financing. In accordance with such law, Buyer is hereby informed that the Property is ☐ or is not ☐ within a designated Federal Flood Hazard Area.

INITIALS

PAGE 1 OF 2

INITIALS

©1998 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SMD-4-1/09E

Exhibit _____
Page __35__

**8. FLOOD DISASTER INSURANCE.** If the Seller or Seller's predecessor-in-interest has previously received Federal flood disaster assistance and said assistance was conditioned upon obtaining and maintaining flood insurance on the Property, Federal law, ie. 42 U.S.C. §5154a, mandates that prospective purchasers be advised that they will be required to maintain such insurance on the Property and that if said insurance is not maintained and the Property is thereafter damaged by a flood disaster, the purchaser may be required to reimburse the Federal Government for the disaster relief provided. Buyer is hereby informed that to the best of the Seller's knowledge Federal flood disaster assistance has ☐ or has not ☐ been previously received with regard to the Property. Note: If such disaster assistance has been received, the law specifies that the required notice be "contained in documents evidencing the transfer of ownership".

**9. WATER HEATER BRACING.** If the Property contains one or more water heaters, Seller is required by California Health and Safety Code §19211 to certify to the Buyer that all such water heaters have been braced, strapped and/or anchored in accordance with law. Buyer is hereby advised that the required bracing, strapping and/or anchors: ☐ have been installed ☐ have not been installed, or ☐ Seller does not know whether they have been installed.

**10. PRESENCE OF MOLD.** If the seller or transferor of property knows of the presence of mold that affects the property and the mold either exceeds permissible exposure limits or poses a health threat then Health and Safety Code §26140, et seq. mandates that prospective purchasers be advised in writing of such mold. In accordance with such law, Buyer is hereby informed that the undersigned does ☐ or does not ☐ know of the presence of such mold effecting the Property.

**11. TITLE INSURANCE.** In the event that the Purchase Agreement does not at present provide that title insurance will be obtained, Buyer is strongly urged to consider purchasing such insurance, and, in accordance with California Civil Code §1057.6, is advised as follows:

IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

**12. OTHER.** _____

_____
_____
_____
_____
_____
_____

**PLEASE NOTE:**

While the information contained in or attached to this Disclosure Statement is believed to be accurate as of the date that it was prepared, the applicable laws and the areas covered by the various natural hazard zones, etc. can change from time to time. Prior to the close of escrow, Buyer may wish to again check the status of the Property. Also, the city and/or county in which the Property is located may have established natural hazard zones in addition to those listed above. Buyer is advised to check with the appropriate local agency or agencies.

The descriptions contained within the above disclosure paragraphs are not intended to be full and complete dissertations of all of the possible ramifications to the Buyer and/or the Property. In the event that this document indicates that the Property is affected by one or more of the disclosures, Buyer is advised to:
1. Review the applicable laws in their entirety.
2. Seek advice of counsel as to the legal consequences of the items disclosed.
3. Retain appropriate consultants to review and investigate the impact of said disclosures.

Likewise no representation or recommendation is made by the AIR Commercial Real Estate Association or by any broker as to the legal sufficiency, legal effect, or consequences of this document or the Purchase Agreement to which it relates.

DYNAMIC BUILDERS, INC.

Date: _AuG. 24, 2010_

SELLER - L. Ramon Bonin, Chairman

Receipt of the above Seller's Mandatory Disclosure Statement is hereby acknowledged:

KWANGSHIK KIM AND LUCY HYEYOUNG KIM

Date: _8/26/2010_

BUYER

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017.
Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.
G: WinAir\Forms\Jeff R\Seller's Mandatory 2010\Kim-1121 Boyle 8-19-10V

INITIALS

PAGE 2 OF 2

INITIALS

FORM SMD-4-1/09E

©1998 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

Exhibit 1
Page 36

DISCLOSURE FOR PURCHASE AND SALE AGREEMENT
For AIR Purchase and Sale Agreements
(When Prepared by Lee & Associates®)

PREMISES:        **1121 AND 1123 SOUTH BOYLE AVENUE, LOS ANGELES, CALIFORNIA**        (the "Premises")

1.    LEGAL EFFECT. Upon acceptance of a binding purchase and sale agreement and any counter offer thereto ("Purchase Agreement"), Seller and Buyer both intend to have a binding legal agreement for the purchase of the Premises on the terms and conditions set forth therein. Seller and Buyer acknowledge that Broker (defined in the Purchase Agreement) is not qualified to practice law or authorized to give legal advice or counsel as to any legal matters affecting the Purchase Agreement. Broker hereby advises Seller and Buyer to consult with their respective attorneys in connection with any questions each may have as to legal ramifications or effects of the Purchase Agreement prior to the execution thereof.

2.    FORM OF PURCHASE CONTRACT AND DEPOSIT RECEIPT. The Purchase Agreement is a standard form document. Broker makes no representations or warranties with respect to the adequacy of the Purchase Agreement for either Seller's or Buyer's particular purposes. Broker has, at the direction of Buyer and/or Seller, merely "filled in the blanks" based on prior discussions and/or correspondence of the parties. Seller and Buyer each acknowledge that the Purchase Agreement is delivered subject to the express condition that Broker has merely followed the instructions of the parties in preparing this document and does not assume any responsibility for its accuracy, completeness or form. Seller and Buyer acknowledge and understand that in providing the Purchase Agreement, Broker has acted to expedite this transaction on behalf of Seller and/or Buyer and has functioned within the scope of professional ethics by doing so.

3.    CONCURRENT OFFERS. Buyer and Seller acknowledge and consent that Broker may represent concurrent and/or competing offers with regard to the purchase or lease of the Premises without further notice.

4.    NO INDEPENDENT INVESTIGATION. Seller and Buyer acknowledge and understand that any financial statements, information, reports or written materials of any nature whatsoever, as provided by the parties to Broker and thereafter submitted by Broker to either Seller and/or Buyer, are so provided without any independent investigation by Broker, and as such, Broker assumes no responsibility or liability for the accuracy or validity of the same. Any verification of such submitted documents is solely and completely the responsibility of the party to whom such documents have been submitted.

5. .    NO WARRANTY. Seller and Buyer acknowledge and agree that no warranties, recommendations or representations are or will be made by Broker as to the accuracy, legal sufficiency, legal effect or tax consequences of any of the documents submitted by Broker to Seller and/or Buyer or of the legal sufficiency, legal effect or tax consequences of the transactions contemplated thereby. Furthermore, Seller and Buyer acknowledge and agree that Broker has not made and will not make any representations or warranties concerning the ability of Buyer to use the Premises for its intended use nor any other matter regarding the Premises, and Buyer is relying and will rely solely on its own investigation of the Premises in accepting and performing under the Purchase Agreement.

6.    NOTICE REGARDING HAZARDOUS WASTES OR SUBSTANCES AND UNDERGROUND STORAGE TANKS. Although Broker will disclose any actual knowledge it possesses with respect to the existence of any hazardous wastes, substances or underground storage tanks at the Premises, Broker has not made (and will not make) any independent investigations or obtained reports with respect thereto, except as may be described in a separate written document signed by Broker. All parties hereto acknowledge and understand that, except as set forth in the preceding sentence, Broker makes no representations or warranties regarding the existence or nonexistence of hazardous wastes, substances or underground storage tanks at the Premises. Seller and Buyer acknowledge that Broker has recommended that they should each contact one or more professionals, such as a civil engineer, geologist, industrial hygienist or other environmental consultants, for advice concerning the existence of hazardous wastes, substances or underground storage tanks.

7.    DISCLOSURE RESPECTING AMERICANS WITH DISABILITIES ACT. The Americans with Disabilities Act, as well as certain state and local laws, is intended to make many business establishments equally accessible to persons with a variety of disabilities; modifications to real property may be required by such laws. Broker is not qualified to advise you as to what, if any, changes may be required now or in the future. The undersigned acknowledge that Broker has recommended that they consult attorneys and qualified design professionals for information regarding whether the Premises are in compliance with applicable law and/or whether modifications and changes are required.

8.    CORPORATE SIGNATURES. Although there is a presumption under California law that the signature of a corporate president is adequate to bind the corporation, a California Court of Appeals in a 1998 case allowed a party to rebut the normal presumption. Therefore, if either of the parties to the Purchase Agreement is a corporation, it is advisable: (i) that the Purchase Agreement be signed by two officers of the corporation, e.g. the president or vice president and the secretary or chief financial officer (note: one individual signing in both the capacity of president and secretary may not be sufficient) and/or (ii) that the corporation provides a duly executed corporate resolution authorizing the transaction and execution by the signing party.

9.    USE AND OCCUPANCY DISCLOSURE. Broker recommends that Buyer hires qualified contractor(s), consultant(s) or other professional(s) to confirm and verify that the physical characteristics of the Property (including, but not limited to, building, office and land sizes, fire sprinkler capacity, electrical power and all utilities, ceiling clear height, loading door sizes and quantity, railroad service, parking spaces, heating/cooling systems, type of construction, restroom(s) number and size, year built of improvements) are to Buyer's satisfaction and that they are adequate to accommodate Buyer's intended use. Broker also recommends that Buyer hires qualified professionals to confirm with applicable governmental agencies that the use and zoning of the Property are acceptable for Buyer's intended use and that Buyer will be able to obtain all permits, licenses, and other approvals necessary for the intended use.

10.    SEISMIC REINFORCEMENT DISCLOSURE. Some cities and counties have established or may be establishing minimum standards for structural seismic resistance for certain buildings constructed prior to 1933, 1976, and possibly other dates. Some structures will be required to comply with various standards set forth by the appropriate governmental agencies. Broker is not qualified to advise you as to what, if any, changes may be required now or in the future. The undersigned acknowledge that Broker has recommended that they consult a qualified architect, attorney or other consultant for information regarding this matter.

11.    MOLD DISCLOSURE. Toxic or other molds may be present within a property in concentrations that may pose a threat to the health of humans. Toxic or other dangerous molds may or may not be visible or apparent to a potential user of the Property. In order to ascertain the nature and extent of toxic or other molds present in a property, it is necessary to conduct testing using a qualified environmental expert specializing in mold inspection and analysis. Broker advises Buyer to retain the services of an environmental testing expert for this purpose.

12.    DISCLOSURE REGARDING CITY ORDINANCES. Some cities have enacted ordinances which provide, among other matters, for car and truck parking restrictions and regulations, truck loading area requirements, and maximum building sizes that can be utilized for a particular use. Additionally, some cities have imposed special taxes, such as the City of Vernon, for warehouse or partial warehouse uses. All of these restrictions and/or regulations vary from city to city, and they are constantly changing. Broker is not qualified to advise you whether the Premises (and/or any related property) or the proposed use thereof complies with these or any other ordinances or whether the Premises (and/or any related property) might, in the future, violate these or any other ordinances nor is Broker qualified to advise you as to the impact thereof. Broker recommends that each party carefully review all applicable codes, regulations, and ordinances affecting the Premises and consult with their attorneys, consultants, engineers, and contractors to determine whether the Premises (and/or any related property) and the proposed use is and in the future will be in compliance with same.

13.    ASSIGNMENT OF BUYER. In the event of any assignment by Buyer of its rights to purchase this property, Buyer acknowledges and agrees that it will take full responsibility to deliver all due diligence information, including the Property Information Sheet, all attachments, including those listed above, and all other due diligence information, to its Assignee, and Buyer's acknowledgement of receipt of said material shall be binding on its Assignee.

The undersigned acknowledge that they have received and read the above Disclosure.

Dated: ___AUG. 24, 2010___            Dated: ___08/24/2010___

| SELLER: | BUYER: |
|---|---|
| DYNAMIS BUILDERS, INC. | KWANGSHIK KIM AND LUCY HYEYOUNG KIM |
| BY: *(signature)* | BY: *(signature)* |
| L. Ramon Bonin, Chairman | |

*(signature)*

O:\Adf\B52010 Documents\B\Inkman\Male-Kim\1123 Boyle 8-24-10V.docx

Exhibit   1
Page   37

## SECOND FLOOR

COMMON CORRIDOR TO ELEVATOR    COMMON CORRIDOR TO ELEVATOR

1121 STE 201
11,104 SF

144 FT

1121 STE 202
10,045 SF

144 FT

1129 STE 203
9,922 SF

144 FT

1129 STE 204
6,427 SF

61 FT    61 FT

## FIRST FLOOR

COMMON DRIVE AISLE

RAMP

GATED ENTRY

COMMON CORRIDOR TO TRUCKWELL

ELEC & PH RM

TRUCKWELL

1125

1115
8,130 SF

144 FT

1121
10,033 SF

144 FT

1123
9,988 SF

144 FT

1129
6,383 SF

48.50 FT

COMMON DRIVE AISLE

BOYLE AVENUE

## BUILDING 2
1115-1129 SOUTH BOYLE AVENUE, LA, CA 90023

EXHIBIT "A"
SITE PLAN

Exhibit    2
Page    38

## FIRST FLOOR PLAN

# DYNAMIC SPECTRUM 2
# OWNERS ASSOCIATION

### BOUNDARY, BUILDING TIES
### AND UNIT DIMENSIONS



SCALE: 1" = 50'

| UNIT 1 - 4 | LOWER ELEVATION 290.0 | UPPER ELEVATION 314.0 |
|---|---|---|

WALL SEPARATION BETWEEN
UNITS = 0.5'

NUMBERS IN PARENTHESES
ARE UNIT ADDRESSES

BUILDING LINE

UNIT 1 (1115)
UNIT 2 (1121)
UNIT 3 (1123)
UNIT 4 (1129)

EXHIBIT "B" PAGE 1
CONDOMINIUM PLAN

Exhibit 2
Page 39



# SECOND FLOOR PLAN

# DYNAMIC SPECTRUM 2 OWNERS ASSOCIATION

## BOUNDARY, BUILDING TIES AND UNIT DIMENSIONS

SCALE: 1" = 50'

| UNIT | LOWER ELEVATION | UPPER ELEVATION |
|------|------|------|
| 5 - 8 | 317.0 | 335.0 |

WALL SEPARATION BETWEEN UNITS = 0.5'

NUMBERS IN PARENTHESES ARE UNIT ADDRESSES

N56°44'14"W  32.07'
N79°39'00"W  100.91'
N10°21'00"E
N33°15'46"E  199.58'
N33°15'46"E
N56°44'14"W  51.87'
N33°15'46"E  232.91'
N33°15'46"E

BUILDING LINE
N56°44'14"W
10.0'    8.0'    27.8'    54.5'    55.1'    9.6'
10.0'    13.0'    12.5'    0.6'    10.4'    20.5'    20.8'    0.2'    3.7'
27.7'    10.6'    10.0'

UNIT 5
(1121 SUITE 201)
146.9'    83.3'    94.7'    138.5    138.5    82.5'    115.4'    199.5'    612.18'

UNIT 6
(1121 SUITE 202)

UNIT 7
(1121 SUITE 203)

UNIT 8
(1121 SUITE 204)

10.0'    10.0'    10.0'    10.0'
32.8'    8.9'    21.3'    32.8'    8.9'    21.3'
62.9'    56.2'    55.1'    59.2'
N56°44'14"W

48.2'
65.2'    376.10'
N56°44'14"W

EXHIBIT "B" PAGE 2
CONDOMINIUM PLAN

Exhibit  2
Page  40



# TRACT NO. 71078

### IN THE CITY OF LOS ANGELES
### STATE OF CALIFORNIA

SCALE: 1" = 60'

SHEET 2 OF 2 SHEETS

**EXHIBIT "C"**
**TENTATIVE TRACT MAP 71078**

Exhibit 2
Page 41

| In re: Dynamic Builders, Inc. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:10-14151 TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2030 Main Street, Suite 1200, Irvine, CA 92614

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION OF DEBTOR FOR ORDER:  (1) APPROVING SALE OF COMMERCIAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b), 363(f) AND 363(m); (2) APPROVING OVERBID PROCEDURES; (3) AUTHORIZING DEBTOR TO PAY SECURED CLAIM IN FULL FROM NET SALE PROCEEDS; AND (4) AUTHORIZING PAYMENT OF COMMISSION TO REAL ESTATE BROKER, LEE & ASSOCIATES COMMERCE, INC., AND AGENTS DAVID BRANDT AND JEFFREY RINKOV; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF L. RAMON BONIN IN SUPPORT THEREOF [[1121 & 1123 South Boyle Avenue, Los Angeles, California]** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  September 8, 2010  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Raymond G Alvarado    ralvarado@adorno.com
- James C Bastian    jbastian@shbllp.com
- Theodore A Cohen    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Mark D Houle    mark.houle@pillsburylaw.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- David J Mccarty    dmccarty@sheppardmullin.com, pibsen@sheppardmullin.com
- Kenneth N Russak    krussak@frandzel.com, efiling@frandzel.com, ltokubo@frandzel.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford    jtedford@dgdk.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re: Dynamic Builders, Inc. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 8:10-14151 TA |

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 8, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery**: Honorable Theodor C. Albert, U.S. Bankruptcy Court, Ronald Reagan Federal Building, 411 W. Fourth St., Bin Outside Room 5097, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 8, 2010 | Arlene Tavares | *Arlene Tavares* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    **F 9013-3.1**